Park *et al.* *vs.* Barron.

No. 135.—ANDREW PARK and others, plaintiffs in error, *vs.* JAMES F. BARRON, defendant in error.

[1.] The guilty party for whose misconduct a divorce *a vincelo matrimonii* is found, may be prosecuted for bigamy, if he marries a second time during the life of the woman to whom he was first married; but the Act forbidding him to marry the second time does not declare the latter marriage void.

[2.] The law is more regardful of nuptial than of ordinary contracts; and persons incapable of contracting generally, may contract marriage.

[3.] Unlawful marriages are not void unless declared to be so.

[4.] In this case, no criminal prosecution having been instituted against the parties in their life, the issue are not bastardized.

In Equity, in Jones Superior Court. Decision by Judge HARDEMAN, April Term, 1856.

This bill was filed by the administrator of A. Barron for interpleader and direction, upon the following facts: James Barron intermarried and was divorced from his first wife, at her instance, he being the "guilty party." He afterwards intermarried again, his first wife being still alive. By both, he had children. The issue of the first marriage claimed the whole estate, contending that the second marriage was void, and the issue thereof bastards.

The Court held the children to be legitimate and entitled to inherit equally with the children of the first marriage.

This decision is assigned as error.

POE & GRIER, for plaintiffs in error.

ADAMS, for defendant in error.

*By the Court.*—MCDONALD, J. delivering the opinion.

James Barron having been the party whose improper or criminal conduct authorized the divorce, was prohibited from

marrying, by the Act of the General Assembly of 1806, during the life of the woman from whom he had been divorced. (*Cobb's New Dig.* 225.) By marrying the second time, the said party being in life, he subjected himself to the pains and penalties enacted against bigamy. (*Id.*) The second marriage is not declared by that Act to be void; but whether it be void or not, the party offending against the provisions of the Statute was indictable, and he could not defend by showing the dissolution of the first marriage.

[1.] His offence was bigamy, but not bigamy as defined in the penal Code; for the marriage having been dissolved, he had no wife; so that on the second marriage he had not a plurality of wives. Yet, if he had been indicted and the State had proved the first marriage, and that the woman to whom he was united in marriage was still living, and then the second marriage, a case of bigamy would have been made out, against which the defendant could not have been permitted to prove the divorce dissolving the first marriage.

But what is the *status* of the issue of this last marriage? Are they legitimate or illegitimate?

The offspring, in a contest for their civil rights, are not estopped from showing the dissolution of the first marriage. They do not occupy the position of their criminal parent. They may prove the dissolution of the first marriage, and if it is of any advantage to them, they may claim it. The Act, for the violation of which their father might have been punished, does not declare this second marriage void; and independent of the light thrown upon the subject by subsequent legislation, it might be well maintained, perhaps, that the taint of bastardy does not attach to them.

By the divorce, the first marriage was totally dissolved; the husband was, in fact, left without a wife; he was of full age and able to contract; he was not deficient in mental capacity; and is it not a fair inference that the Legislature did not intend to involve in his difficulty a confiding woman and innocent offspring, by declaring a marriage void which he might subsequently enter into? By Statutes of England,

persons within certain degrees of kindred were prohibited from marrying; and yet, marriages between such persons, were not void, but voidable, and if not avoided during the lives of the parties, the issue were legitimate, and the Common Law Courts would prohibit the Ecclesiastical Courts from proceeding to call the marriage in question after the death of either of the parties, because of its tendency to bastardize and disinherit the issue. (*Shelford on Mar. and Divorce*, 163, 484.) Barron, whose misconduct led to the divorce, was prohibited from marrying, under a penalty; but the marriage is not declared void by the Act which prohibited him from marrying. Persons within the degrees of kindred in which marriages are prohibited in England, intermarrying, violate a public law; and yet, the marriage is valid until set aside, and the issue of such a marriage are legitimate, unless it is annulled. In that case, both parties must be in fault. They must both know that they are doing an act which, by the law of the land, they are forbidden to do. That is not necessarily the case in a marriage where one of the parties has been divorced.

The first marriage Act in England was the Act of 26 *George* 2*d*. That Act was never of force in this country. It expressly provides that it shall not extend to marriages solemnized beyond seas. There is a marked difference between that Statute and our own, as respects the solemnization of marriages. That Act not only inflicts a most severe penalty on persons who solemnize marriages contrary to its provisions, but it also declares all marriages thus solemnized void. Our Statutes inflict a penalty, but do not declare the marriage void. (*Cobb's New Dig.* 282, 818, 819.)

[2.] For obvious reasons connected with the welfare of society, the law is more tender of nuptial contracts than ordinary contracts which relate merely to property and the ordinary dealings among men. Marriage contracts are, by the Common Law, excepted from the rules which govern ordinary contracts. By the Common Law, an idiot might contract marriage, and the marriage of an idiot or lunatic was consid-

ered valid.   (1 *Roper on Hus. and Wife*, 339.)   The learned ·
annotator on Lord *Coke's first Institute* remarks, that " be-
fore the Act of 15 *Geo.* 2 *c.* 30, there could be no doubt as to
the validity of the marriages of lunatics, where it could be
clearly proved that they were married in their lucid intervals.
One should think there could be as little room to doubt their
incapacity of contracting marriage whilst in an actual state
of insanity, if our books were not remarkably silent on the
subject; and it was not also said, that by our law an idiot,
*a nativitate*, in whom the general incapacity of making con-
tracts appears to form as strong an objection as occurs in the
case of a madman, may consent to a marriage.   This doc-
trine, as to idiots, however strange it may appear, is men-
tioned as a point adjudged in one case, &c. &c.   (*Hargraves
& But. Notes*, 80 *a. note* 47.)   The Civil Law was different;
and the Civil Law is the law of the Ecclesiastical Courts of
England.   Now by the Statute of *George* 2, referred to
above, and which never was of force in this country, the mar-
riage of idiots are declared to be void.

[3.] Our Penal Code treats them as void, though we have
no Statute declaring them so.   (*Cobb's New Dig.* 819.)   But
Barron's marriage is not the marriage of an idiot, but it is
the marriage of a person prohibited from marrying, under a
penalty, the Statute not declaring the marriage void.   If it
be not a good one, it should be classed, according to the an-
alogies of the English Law, with marriages that are voida-
ble.   The Statute of 32 *Henry 8th*, *c.* 38, adopts the prohi-
bitions of the law of God, by declaring that all persons may
lawfully marry but such as are prohibited by God's law.
The Statute of 25 *Henry 8th*, *c.* 22, prohibits marriages with-
in certain degrees, and declares that the children of such un-
lawful marriages are illegitimate.   It is doubtful whether
this latter Statute has ever been repealed by subsequent En-
glish Statutes.   Hence, marriages within certain degrees of
kindred are, in England, prohibited by both the Canon and
Statute Law.   They are, therefore, unlawful; and yet, they

are not void, but voidable only. (1 *Ec. Rep.* 73.) If not pronounced void in the lifetime of the parties, they are valid to all civil purposes. (*Id.* 168.) If such marriages are prohibited by the Statute Law in England, why are not the parties who enter into them, in violation of the law, indictable for committing an act forbidden by a public law? The Common Law Courts, however, have never interfered, and have left such cases to the undisturbed jurisdiction of the Ecclesiastical Courts. If the Courts there abstain from taking cognizance of such cases, the Courts here may well say that the public policy to which the Courts have deferred, by declaring contracts void which are prohibited by inflicting statutory penalties on those who enter into them, whether the contracts are declared void or not, does not require the enforcement of that principle so as to set aside actual marriages which the Legislature has not pronounced void. A public policy which looks to the protection of the innocent and unoffending, to the peace of families and the welfare of society, would seem to us to forbid the inference of a purpose on the part of the Legislature which they have not expressed, that the marriage of a party against the prohibition of the Act of 1806 should be void.

[4.] If the marriage were voidable only, no proceeding having been instituted during the life of Barron to annul it, the issue are legitimate and entitled to inherit, and they are clearly entitled, if the marriage was neither void nor voidable.

But if we should hold the marriage to be void, which we do not, we should be bound, in deference to the unmistakeable policy of our Legislature, to hold that the issue are not bastards, when no criminal prosecution was instituted against the offending parent during his lifetime. Our law goes farther, and shows most clearly the legislative intent, that the blameless offspring of an acknowledged meretricious marriage, or marriage declared void by Statute, shall not be bastardized and subjected to the civil consequences which fall upon the fruits of such an unlawful union in England. Even

though the marriage may be according to uniform construction, *ipso facto* void, our Statute makes the issue legitimate, if born before the commencement of a prosecution for polygamy, or within the ordinary time of gestation afterwards. (*Cobb's New Digest*, 814.)

We decide that the judgment of the Court below must be .affirmed.