C. W. CRAWFORD v. THE STATE.

BIGAMY. *Marriage and divorce. Divorce in another state. Direction not to remarry. Effect of same on subsequent marriages.*

On a trial for bigamy, the indictment charging that the accused, at a certain time stated, married and had for his wife a certain person named, and afterwards, at a time stated, while such person was still living, feloniously married and had for his wife a certain other person named, it is no defense to prove that by the decree of divorce from the bonds of matrimony procured by a former wife of the accused, in another state, prior to the marriage first mentioned in the indictment, he had been, under authority of the statutes of such state, directed not to marry again, for the then existing marriage was annulled by the decree, and the mere direction not to marry again, imposed on him by way of penalty, does not operate to invalidate the second marriage mentioned, or to relieve the third of its bigamous character.

FROM the circuit court of Attala county.

HON. C. H. CAMPBELL, Judge.

The opinion states all the facts relating to the controlling question involved in the decision.

*Anderson & Davis*, for the appellant.

On the facts shown by the record the appellant should have been acquitted, and doubtless would have been, but for the erroneous instruction for the state, in which his union with Florence King was recognized as a valid marriage. That marriage occurred in February, 1893, while appellant's first wife, Susan Crawford, was still alive, and before he had obtained any divorce from her. It was therefore void, and the indict

ment charging him with bigamy, based upon his having for wife Florence King and Roxie Gregory at one and the same time was not supported by the evidence. *Gibson* v. *State*, 38 Miss., 313; *Cartwright* v. *McGown*, 12 N. E. Rep., 737; *Holbrook* v. *State*, 34 Ark., 511; 14 W. Va., 834.

The first wife, Susan Crawford, having died in July, 1893, after the union of appellant with Florence King, but before he married Roxie Gregory, in December, 1894, the marriage with the last named person was not unlawful, since no impediment existed by reason of the invalid union with Florence King.

*Frank Johnston*, attorney-general, for the state.

The decree prohibiting the appellant from marrying again, in a divorce *a vinculo*, should be treated merely as a penalty subjecting him to process of contempt, but not rendering the second marriage void. The question is *res nova* in Mississippi, but it has been so determined by many of the courts. *Van Voorhis* v. *Brintnall*, 86 N. Y., 18; *People* v. *Hovey*, 5 Barb. (N. Y.), 117–119; *Moore* v. *Hegeman*, 27 Hun (N. Y.), 68, 70; *Dickson* v. *Dickson*, 1 Yer. (Tenn.), 110, 114, 115. The decree could not have any extraterritorial effect so far as this penalty is concerned. *Fuller* v. *Fuller*, 40 Ala., 301, 306; *Commonwealth* v. *Lane*, 113 Mass., 458; *Putnam* v. *Putnam*, 8 Pick., 433; *VanStorch* v. *Griffin*, 71 Pa. St., 240, 244; *Dickson* v. *Dickson, supra; Van Voorhis* v. *Brintnall, supra.* To say that such a provision against a second marriage by the party in fault, in a decree dissolving the marriage, is effectual as a bar to a second marriage in the state where granted, and does not have that effect elsewhere, involves this absurdity: A resident of New York was thus divorced in that state, he stepped over to New Jersey, was married a second time, came back to New York, and the second marriage was recognized by the New York court. *Van Voorhis* v. *Brintnall, supra.* Such a result should demonstrate that the prohibition should not have the effect, anywhere, of making the second marriage void. *Thorp* v. *Thorp*, 90 N.

Y., 602.    Evasion is so easy that no disability to marry can be said to exist.

I call special attention to a Georgia case, holding that the second marriage is not void, but at most voidable.    *Park* v. *Barron*, 20 Ga., 702.

There is another view, viz. :    Whether, in the absence of any express stipulation in the decree that a second marriage should be a nullity, the second marriage would be invalid.    1 Bishop on Divorce (4th ed.), § 306.    This learned author refers to the rule that a common law marriage is good notwithstanding statutory regulations, where the statute does not contain express words of nullity.    *Ib.*, § 283.    He further says that there are strong reasons for holding that a general prohibition should not make the second marriage invalid.    2 Bishop on Divorce (4th ed.), § 704.    See, also, *Williams* v. *Oates*, 5 Ire. (N. C.), 535.    If it operates as a penalty, the second marriage is valid, and the party prohibited may be criminally liable under a penal statute.    2 Bishop on Divorce (4th ed.), § 701; *Dickson* v. *Dickson*, *supra*.    See, also, *Houston* v. *Moore*, 5 Wheaton, 1, 69;    17 Mass., 515, 540;    14 Johns. (N. Y.), 335;    17 *Ib.*, 4;    8 Pick., 433.

The reasoning, as well as the weight of authority, is to treat the prohibition as a penalty, bringing the offender within any criminal statute that may exist for its enforcement, but not as annulling the second marriage.    Otherwise the extraordinary anomaly would be presented of one party divorced *a vinculo*, and the other only partially divorced.

Argued orally by *Frank Johnston*, attorney-general, for the state.

WOODS, J., delivered the opinion of the court.

The indictment charges " that C. W. Crawford, in Pickens county, Alabama, on the fifth day of February, A.D. 1893, did marry and have for his wife one Florence King, and afterwards, while the said Florence · King was living, in the county of At-

tala, in the State of Mississippi, on the ninth day of December, 1894, feloniously did marry and have for his wife one Roxie Gregory,'' etc.    These facts appear plainly enough in the transcript, and are not controverted.    The defense to the crime charged rests upon the following state of facts shown by the evidence offered by the defendant—viz.: In the year 1880, in the State of Georgia, the defendant was married to one Susan Driggers.    In the year 1888, Susan obtained a divorce from the defendant, in Russell county, Alabama, by the terms of which the bonds of matrimony theretofore existing between herself and the defendant were dissolved, though the decree of dissolution, under the statute of that state, prohibited the marrying again of the defendant.    In the month of July, 1893, Susan died; but, before that time, and while Susan was alive, to wit: in February, 1893, the defendant had been married to Florence King, in the State of Alabama, as we have already seen.

The contention, and the only contention possible, on which the defendant's marriage with Roxie Gregory, in Attala county, in December, 1894, can be justified and held lawful is that the marriage with Florence King, in 1893, was void by reason of the prohibition of marriage by the defendant in the decree of the Alabama court which dissolved the marriage tie between Susan Driggers, the first wife, and the defendant, and, hence, the marriage with Florence King being void, the subsequent marriage with Roxie Gregory, after the death of Susan Driggers, was legal, valid and not bigamous.

In considering the important and delicate question thus presented, we turn, first of all, to the Alabama statute to ascertain its precise terms.    Section 2688, code of Alabama 1876, declares that the chancellor before whom divorce proceedings are pending, '' in making his decree in the cause, shall, as the evidence and the nature of the case may warrant, direct whether the party against whom the decree of divorce is made be permitted to marry again,'' etc., without any other words making a marriage subsequently contracted in disregard of the direc-

tion of the decree a nullity, and without declaring the conse-
quences of disobedience to the direction of the decree against
another marriage.   It is clear that the defendant was in con-
tempt of the court in Alabama which granted the divorce to
Susan Driggers, on her application, in making the marriage
with Florence King; and it may be, also, that, by such mar-
riage with Florence, he incurred the penalty of the criminal
code of Alabama denounced against bigamy; but it is, never-
theless, clear likewise that such marriage is not made void by
the Alabama law in any express terms.

To reach any satisfactory solution of the question presented,
it may be well to consider for a moment what marriage, or the
marriage contract, is.   By millions of persons in civilized Chris-
tendom marriage is regarded as a sacrament, and by all as the
assumption, on the part of the two persons consenting thereto
and entering thereupon, of a relationship the tenderest and
most sacred which mortals may contract.   By the law itself,
marriage is regarded as a contract, and more than an ordinary
contract which affects only property rights, for, in marriage
contracts, not only the parties thereto are vitally concerned, but
society, the state itself, is likewise concerned.   Marriage was
before statutes, and the foundations of good government rest
upon faithful maintenance of the nuptial contract.   So far as
human law can render inviolable any contract entered into by
human beings, the inviolability of marriage is sought to be
inculcated and upheld.   But the law, taking knowledge of the
sin and wrong and crime that may creep into human life and
conduct, and so render the holiest relationship a thing of loath-
ing and horror to outraged innocence and fidelity therein bound,
compassionately and wisely makes provision for the annullment
of the marriage contract itself on a few specified and well-
known grounds.   But the voice of the law and the spirit of the
law, with all its intendments and implications, make for mar-
riage and for the maintenance of the validity of the marriage
contract.

Now, we know that upon the rescission and annullment of ordinary contracts by the courts of the country, the parties become freed therefrom and are no longer bound thereby, and the incidental fact that terms and conditions may be imposed upon the wrongdoer in no way affects the rescission and annullment. The offender may be constrained to yield obedience to the terms of the decree annulling the contract, under pains and penalties, but the contract itself is at an end, and no longer binding upon the parties to it. Exactly this result follows the dissolution of the marriage contract in the absence of express statutory words to the contrary. It could not be otherwise, regarded simply as a contract, and pre-eminently could it not be otherwise regarding it as something more than an ordinary contract. In the case at bar, when the decree *a vinculo* was rendered by the Alabama court in the suit of Susan Driggers, she stood just as if never married to the defendant. She was no longer his wife and he was no longer her husband. Regard being paid to matrimony, there are two, and can only be two, classes in society—the married and the unmarried. Whenever the innocent wife is released from her hateful bonds, that instant the guilty husband is released from the same bonds. A wife without a husband, or a husband without a wife, would be an anomaly. It must be remembered that we are not considering a second marriage entered into after a decree dissolving a first marriage, and containing a nullity clause, whereby incapacity to contract a second marriage was imposed upon the offending party. The case in hand is one wherein the offender has been directed only not to contract marriage again. He incurs a penalty for disobedience of the direction. He may be criminally punished, but with him the punishment must stop. To extend the penalty to the second wife, ignorant of her husband's violation of the direction of a court dissolving his former marriage, and innocent of any thought even of violating any law, and to extend the punishment further to the helpless and unsinning offspring of the second union, would, as it seems to

us, be not only cruel and unjust, but would be, moreover, a departure from the humane spirit of the law, which regards every marriage with favor and seeks to uphold the validity of every marriage contract, except when the same is made void by law. The innocent second wife and the unoffending offspring are not to be branded, the one as having lived in concubinage and the others as having been born bastards, for the misconduct of the husband and father, who has merely refused obedience to the direction of a court in a decree dissolving his former marriage, and who has thereby incurred a penalty. The former marriage contract is annulled, the parties to it are no longer bound thereby, the guilty husband has been forbidden, under penalty, to marry again. The law, as well as reason and humanity, says punish the guilty, but do not confound the innocent with him. Let the offender suffer the penalty that he has wilfully incurred, but the marriage thus illegally entered into is not void, and the innocent wife and her little ones are to be treated as within the pale of the law's protection.

Multitudes of marriages are entered into without strict observance of the mere forms prescribed by statute for contracting matrimony, and are, hence, illegal, perhaps; illegal certainly to this extent, viz., the parties thereto, with others aiding in violation of statutory directions, subject themselves to penalties. And yet, in this day and time, no court, we apprehend, would declare a marriage void for failure to comply in its solemnization with any or all of the prerequisite formalities of a statute, unless unhappily there could be found an enactment declaring void a marriage entered into honorably, openly, in good faith, and with the joyful consent of the parties thereto, because of some wretched formality which had been overlooked or disregarded.

This view which we have advanced, and briefly endeavored to maintain, is humane, conservative and wise. While it shelters the unoffending, it leaves the wrongdoer to his appropriate punishment. It tends to make inviolable the most tender and im-

portant contract into which men and women may enter, in so far as the follies and crimes of mankind will permit any obligation to be held inviolable, and to this extent makes for the happiness and security of society—the aim and end of all law.

A long protracted and thorough examination of all authorities within our reach discloses much confusion on the subject, and marked contrariety of opinion in the courts of last resort. It may be admitted that the volume of judicial determination is opposed to our view. But, though the question is *res nova* with us, and therefore one of great interest, as well as one of importance on account of the nature of the subject, yet the view which we adopt was vigorously asserted forty years ago by the supreme court of Georgia in *Park* v. *Barron*, 20 Ga., 702. This view was taken, thirty years later, by the supreme court of Indiana in *Mason* v. *Mason*, 101 Ind., 25. Bishop, in both volumes of his able work on Marriage and Divorce, discusses the question with great clearness and strength, and demonstrates the correctness of the position which we now adopt.

The assignments of error filed by counsel for defendant are all nonmaintainable. ·

*Affirmed.*