Statement of the Case.
MONROE, J.
Mrs. Catherine Gabisso, widow of Joseph Frigerio, Jr., died in this city March 12, 1906, leaving six children, to wit, Angele, divorced wife of Guiseppe Vagge, Therese, Louis, Alphonse, John, and James, and leaving a will whereby she bequeathed the disposable portion of her estate to her two daughters and appointed them her executrices. After letters testamentary had been issued, and an inventory taken, Mrs. Louise Cuevas presented to the court a petition alleging that she is the widow of Joseph Louis Frigerio, predeceased son of Mrs. Catherine Frigerio and father of two minor children of whom petitioner is the mother and guardian, and praying that the minors be recognized as forced heirs of their grandmother and sent into possession of an undivided one-seventh interest in her estate. To this petition the above-named children and heirs of Mrs. Catherine Frigerio answer, admitting that their brother, Joseph Louis, died in 1896, but denying that the minors represented by plaintiff are forced heirs of Mrs. Catherine Frigerio, or that they are entitled to any part of the property left by her, or that Mrs. Louise Cuevas was ever lawfully married to their brother. Further answering, they allege that on May 15, 1892, the date upon which such marriage is said to have been celebrated, Louise Cuevas and Joseph Louis Frigerio were residents of Bay St Louis, Miss.; that Louise Cuevas was a person having one-eighth, or more, of negro blood, whilst Joseph Louis Frigerio was a white man; that marriage between such persons was prohibited by the law of Mississippi ; and that, if the two mentioned entered into a marriage, the same was null and void. They further allege that on September 30, 1882, Joseph Louis Frigerio was married, in Switzerland, to Emma Rochat, and thereafter established a matrimonial domicile in New Orleans, but that he also lived, both in this city and at Bay St. Louis, in open adulterous concubinage with Louise Cuevas; that in September, 1891, his wife brought suit for *707 divorce, assigning said adultery, and concubinage as her cause of action, and obtained judgment therein, in December following, that, under Oiv. Code, art. 161, said Joseph Louis Frigerio could not thereafter legally have married his accomplice in such wrongdoing, and that such marriage can have produced no civil results, as the same was contracted with knowledge of the facts and in bad faith. To the attack upon her marriage, plaintiff pleads the prescription of five and ten years. She also pleads estoppel, resulting, as she alleges, from the fact that defendants renounced the succession of their brother, Joseph Louis Frigerio.
The facts of the case are as follows: In 1882, Joseph Louis Frigerio married Emma Rochat and brought her to live in New Orleans, as alleged in the answer. In 1883, being then employed as a clerk and watchmaker in his mother’s store, he made an acquaintance with Louise Cuevas, which ripened into an illicit connection, and resulted in his bringing her (from Bay St. Louis, where she lived) to this city and here living with her in concubinage, and in his wife’s bringing suit against him for, and obtaining judgment of, final divorce, on the ground that he was committing adultery and living in concubinage with said Louise Cuevas. In the suit thus brought, defendant was cited, personally, but permitted judgment by default to be confirmed against him, in December, 1891; the fact being that he was then living with Louise Cuevas, who knew that he was a white, married man, and that she was an octoroon. On May 15, 1892, Frigerio and Louise Cuevas were married at Bay St. Louis, and, whilst they may have spent some little time there, they afterwards, as before, mainly resided in New Orleans. Article 263 of the Constitution of the state of Mississippi (in force at the date of the marriage in question) reads, in part:
“The marriage of a white person with a negro, or mulatto, or a person having one eighth, or more, of negro blood, shall be unlawful and void.”
And the statute law, thereafter enacted to. conform to the Constitution,’ imposes a penalty for such marriages beyond that of nullity. Ann. Code Miss. 1892, § 2859. In 1896, Joseph; Louis Frigerio died, in New Orleans, and, defendants having renounced his succession, his mother (who was advised that his marriage was void) was put in possession of his estate, as his sole heir, though it does not appear that he left anything of value; the purpose in opening his succession having been, in all probability, to clear the title of certain real estate which had belonged to the community formerly existing between his parents..
Opinion.
The alleged marriage relied on by plaintiff was, as we have seen, prohibited, on pain, of nullity, and denounced as an offense, where made. For another reason, it was placed in the same category by the law of the man’s domicile, since article 161 of the Civil Code of this state reads:
“In case of divorce, on account of adultery, the guilty party can never contract matrimony with his, or her, accomplice in adultery, under penalty of being considered, and prosecuted as, guilty of bigamy, and under penalty of the nullity of the marriage.”
Plaintiff’s counsel opens his argument by saying:
“It being conclusively established that Joseph Louis Frigerio, deceased, was always domiciled in New Orleans, and Louise Cuevas was, up to* the time of her marriage, domiciled in Bay St. Louis, Miss., it therefore follows that his capacity to contract marriage, and the validity of the-marriage itself, are governed exclusively by the laws of his domicile.”
He then contends that the article of the-Civil Code cited has no application because-plaintiff, as he alleges, is not sufficiently identified as the accomplice in adultery of Joseph Louis Frigerio; her name not being: *709 mentioned in the judgment of divorce obtained against him, or in any reasons for judgment, or in any testimony given in support thereof, so far as shown by the record; and this view was adopted by the judge a quo, who seems to have been of the opinion that the article finds its application only in eases where the judgment of divorce mentions the name of the accomplice. This theory, however, finds no support in the language of the law, and the idea that it is supported by interpretations placed by French jurists on article 298 of the Code Napoleon appears to us to be based upon a misapprehension. The article of the French Code reads:
“Art. 298. Dans le cas de divorce admis en justice pour cause ¿’adultere, l’époux coupable ne pourra jamais se marier avec son complice. Da femme adultére sera condamnée par le méme jugement et sur la requisition du ministére public, a la reclusion dans une maison de correction pour un temps determiné, qui ne pourra étre moindre de trois mois, ni exceder deux années.”
It will be seen that, where the accomplice is a woman, this law requires that, upon the demand of the minister, she shall be condemned by the same judgment that awards the divorce, and that, upon the other hand, unlike our law, it does not denounce as null marriages contracted in violation of its prohibition. The French jurists, therefore, in the main, concur in the view that it is merely lirohibitive, or, as we would say, directory; but they also concur that, construed in that way, it finds its application in any ease where, from all the facts and circumstances, and without a specific judicial finding to that effect, a particular person is identified as the accomplice; the idea being expressed by one of the commentators as follows:
“Dans toutes les hypotheses qui viennent d’etre examinees, la qualité de complice resultera done, soit d’une piéce_ de la procedure, soit d’une mention contenue dans le jugement. Or 1’article 298. n’exigeant que la qualfté de complice soit établie d’une maniere particuliSre, il suffit, comme l’a décidé la cour de Paris, que de l’ensemble des faits et circonstance de i’affaire, et sans qu’il soit besoin d’une constatation judiciare, le nom du complice apparaisse d’une fagon certaine et incontestable.” Hue, Tome 2, c. Ill, art. 298; EfEets du Divorce. Code Civil.
See, also, Demante-Code Civil, Tome 1, p. 528, No. 367; Baudry-Lacontinerie, vol. 3, p. 164, No. 259; Dalloz-Code Civil, Tome 1, art. 298, p. 559; Laurent, vol. 2, No. 484.
Counsel for plaintiff, referring to Mrs. Emma Frigerio’s petition for divorce, says:
“There are two charges'in the petition: ‘That her said husband is guilty of adultery, and_ is now living in open concubinage with one Louise Cuevas, at No. 153 St. Anthony street, in New Órleans.’ Adultery, with whom we know not, for the name is not disclosed, and concubinage with Louise Cuevas, are both charged in the averment. We are left in ignorance as to which charge, if either, or both, was proven or not.”
In the petition for divorce, as copied in the transcript, we find no comma after the word “adultery”; the charge reading:
“That her said husband is guilty of adultery and is now living in open concubinage with one Louise Cuevas,” etc.
—which, as we understand the language, means to say that the petitioner’s husband is now guilty of adultery with one Louise Cuevas and is now living in open concubinage with one Louise Cuevas, and we should be disposed to adopt that interpretation, even if there were a comma where the learned counsel has, inadvertently, placed it, since there are few lawyers, we imagine, who do not know that proof would be inadmissible in support of a bare allegation of adultery, without specification of person, time, or place. Compton, F. W. C. v. Compton, F. M. C., 9 La. Ann. 499. The name of the accomplice is therefore declared on the face of the petition. There was, and is, no law requiring the testimony to be reduced to writing or otherwise preserved in the record; and it would have been entirely outside of the law, and unheard of, for the judge to have mentioned the name of the accomplice, who was not before him, in the judgment, the whole of which, save the merely formal parts, reads as follows:
*711 "On motion of Ker & Duvignead, of counsel Eor plaintiff, and on producing due proof in support of plaintiff’s demand, the law and the evidence being in her favor: It is ordered, adjudged, and decreed that the judgment by default, herein entered on November 13, 1891, be now confirmed and made final, and, accordingly, that there be judgment in favor of plaintiff, Emma Rochat, wife of J. Louis Frigerio, against said J. Louis Frigerio, her husband, decreeing a divorce a vinculo matrimonii, forever dissolving the bonds of matrimony heretofore existing between them, and costs of suit,” Rendered December 14, and signed December 19, 1891.
Apart from the presumption to that effect, the recital, signed by the judge, that due proof was administered, is as good evidence of that fact as could well be furnished, and, as no proof could have been administered, under the pleadings, and none other was needed, to have authorized the judgment rendered, save proof of the adultery and concubinage alleged, the identification of the plaintiff herein as the accomplice is necessarily complete.
¡Beyond this, and if any corroborative evidence were needed to support, what appears to us to be a plain proposition, it has been abundantly shown, in the instant ease, that icn September, 1891, when the divorce suit was begun, J. Louis Frigerio was, as a matter of fact, living in concubinage with plaintiff on St. Anthony street, in this city, and that on the 17th of that month he registered the death of an infant, two days old, to which he gave an assumed name, but which was the issue of that relation. By virtue, therefore, of the explicit declaration of the law to that effect, his subsequent marriage with plaintiff was absolutely void, and, having been made in bad faith, by both of the' contracting parties, is without civil effects. Succession of Taylor, 39 La. Ann. 829, 2 igouth. 581; Succession of Minvielle, 15 La. Alin. 342.
In • the Hernandez Case, upon which the learned judge a quo seems to have relied, the syllabus reads, in.part, as follows:
“The prohibition of article 161 of the Civil Code * * * is directed against marriage between the guilty spouse and the particular person, or persons, who are designated in the petition for divorce, or described in the evidence in support of it, and upon which petition and evidence the decree of divorce is founded.”
And this syllabus is sustained by the text of the opinion; it being there found by the court that the action for divorce, then under consideration, was not founded on any charge of adultery in which the second wife of the divorcee was alleged or shown to have been a participant, and the fact being that it was not shown that her name had been mentioned in the divorce suit, either in the pleadings, the evidence, or the judgment. Succession of Hernandez, 46 La. Ann. 962, 15 South. 461, 24 L. R. A. 831.
In view of the statement which the learned counsel mates in the opening of his argument, and which we have heretofore quoted, there would seem to be nothing more to be said upon the subject of the validity of the marriage in question. Further along in counsel’s brief, however, we find the following, to wit:
“Defendants encounter another insuperable obstacle to the pretended invalidity of the marriage. * * * The disability to remarry, after divorce, attaches only by way of penalty, within the state, and a valid marriage may be contracted in another state which will be recognized in the former state where the divorce was granted.”
And, upon the basis of the proposition thus stated, it is argued that plaintiff’s marriage at Bay St. Louis was valid, because the statute law of Mississippi, then in force, prohibited marriages only between white persons and persons having one-fourth negro blood, and it is said that the provisions of the Constitution, bringing persons having one-eighth negro blood within the prohibition, had not become operative. We do not, however, so understand the situation. It is undisputed that the Constitution had been adopted and was in force, so far as it was self-acting, and article 263, as we have seen, reads:
*713 “The marriage of a white person with * * * a person who shall have one eighth, or more, of negro blood shall be unlawful and void.”
It seems clear that no then existing statute, fixing the permissible limit of negro blood at one-fourth, could be invoked as controlling the language thus used in the Constitution, save by virtue of some other provision of the Constitution itself, and no such other provision has been called to our attention, which can avail the plaintiff. To the contrary, article 274, which has been offered in evidence, provides that, with certain exceptions, the laws repugnant to the Constitution should continue in force only until April 1, 1892, and plaintiff’s marriage was not celebrated until May 15, 1892. Apart from that, the proposition that, when a citizen and resident of Louisiana, whose status is governed by its laws, goes into an adjoining state and there contracts a marriage, which, from considerations of morality and public policy, he is prohibited from contracting at home, the law of his domicile can be invoked to give effect to such marriage and its consequences, is untenable. This court has said:
“We understand the rule to be well settled that marriages, valid by the law of the country where they are entered into, a.re valid in any other country to which the parties may remove, unless there exists, from reasons of public policy, in the country to which they remove, some impediment by the laws of that country, or that such marriages are in derogation of good morals. In such exceptional cases, comity could not be invoked to recognize their validity.” Succession of Caballero, 24 La. Ann. 575; Saul v. His Creditors, 5 Mart. (N. S.) 569, 16 Am. Dec. 212; Dupre v. Ex’r of Ballard, F. W. C., 10 La. Ann. 411; Babin and Husband v. Le Blanc, 12 La. Ann. 367; Succession of Taylor, 39 La. Ann. 829, 2 South. 581.
And in other jurisdictions it is held that:
“The rule that a marriage, valid where celebrated, is valid everywhere, is subject to the ^exception that foreign marriages, though - valid where celebrated, will not be recognized as valid if they are: First, polygamous; second, incestuous; or, third, in other respects obnoxious to the laws and the public policy of the country where such marriages are assailed.” A. & E. Enc. of Law, vol. 19, pp. 1211, 1212.
“Another exception to the rule — that the lex loci governs the validity of marriages — is that marriages in evasion of the laws of the domicile will not be recognized as valid.” Id. p. 1213.
The marriage here relied on, being an absolute nullity in contravention of public policy and good morals, was not susceptible of ratification, acquired no validity by the lapse of time, remains open to attack, and cannot serve as the basis of an action; in short, in legal contemplation, it has never existed. The plea of prescription cannot therefore avail to sustain or protect it. Vaughan v. Christine, 3 La. Ann. 328; Succession of Minvielle, 15 La. Ann. 342. As the defendants are not now claiming anything that they surrendered, in renouncing their brother’s succession in favor of their mother, it does not appear to us that they are affected by any estoppel.
It is therefore ordered, adjudged, and decreed thajt the judgment appealed from be annulled, avoided, and reversed, and that plaintiff’s demand be rejected, and this suit dismissed, at her cost in both courts.