### ABRAMSON v. ABRAMSON.
### No. 5075.

Court of Appeals of District of Columbia.

Argued March 11, 1931.
Decided April 6, 1931.

Raymond Neudecker and Wm. C. Ashford, both of Washington, D. C., for appellant.

W. Bissell Thomas, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This case is here on appeal from a decree of the Supreme Court of the District of Columbia granting the appellee here, plaintiff below, a limited divorce, alimony, and other relief after dismissing a cross-bill for annulment filed by appellant, who was defendant below.

The plaintiff and defendant, while residents of Chicago, Ill., were married in Milwaukee, Wis., February 17, 1912, three

months after the plaintiff had been granted a divorce from a former husband in Chicago under a statute of Illinois (Hurd's Rev. St. 1908, c. 40, § 1a), prohibiting remarriage of either party to the decree within twelve months, and declaring any marriage so contracted both void and felonious.

This statute is in the following language:

Chapter 40. "1a. *Remarriage Within One Year Forbidden.* § 1a. That in every case in which a divorce has been granted for any of the several causes contained in section 1 of said act, neither party shall marry again within one year from the time the decree was granted; Provided, when the cause for such divorce is adultery, the person decreed guilty of adultery shall not marry for a term of two years from the time the decree was granted: Provided, however, that nothing in this section shall prevent the persons divorced from remarrying each other; and every person marrying contrary to the provisions of this section shall be punished by imprisonment in the penitentiary for not less than one year, nor more than three years, and said marriage shall be held absolutely void. (Added by amendment by act approved May 13, 1905. In force July 1, 1905; L. 1905, p. 194; Legal News Ed., p. 166.)"

Immediately after their marriage in Milwaukee, the parties returned to Chicago, where they lived together for five or six years; then lived for a time in New York; and came to Washington in 1919, where they have ever since resided, though apparently not in cohabitation since 1926.

On June 1, 1921, a female child was born to the couple, and is now living.

On July 1, 1923, a statute of Illinois went into effect expressly repealing the earlier statute prohibiting the marriage of divorced persons within one year of their divorce, and validating all marriages contracted in violation of such prohibition, in the following language:

Laws of Illinois of 1923, p. 327:

"An Act to repeal section 1a of 'An Act to revise the law in relation to divorce,' approved March 10, 1874, in force July 1, 1874, as amended and to validate certain marriages heretofore contracted in violation of said section." Approved June 30, 1923. In force July 1, 1923, p. 327.

"¶2 (1). Repeal. Section 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly: Section 1a of 'An Act to revise the law in relation to divorce,' approved March 10, 1874, in force July 1, 1874, is repealed.

"¶2 (2). Validation. § 2. In all cases where a marriage has been contracted in violation of the provisions of section 1a of 'An Act to revise the law in relation to divorce,' approved March 10, 1874, as amended, except where either of the contracting parties has, subsequent to said marriage * * * entered into another marriage contract which was and is legal and binding, under the laws of Illinois, said marriages so contracted in violation of said section 1a, if otherwise legal, are hereby validated and confirmed, except that property rights heretofore vested shall not be affected by this Act." (Cahill's Rev. St. 1929, c. 40, par. 2 (1, 2).

On June 1, 1927, the appellee here filed her bill of complaint in the Supreme Court of the District of Columbia praying for a limited divorce, custody of the child, and alimony, on the ground of desertion.

To this bill the defendant filed an answer and cross-bill, and on October 17, 1928, filed an amended and supplemental cross-bill asserting that the marriage of the parties in Wisconsin was void ab initio by operation of the Illinois statute of 1874, and praying a decree to annul and set aside said marriage; to declare the child his lawful heir; and to award him her custody.

The trial court dismissed the cross-bill and granted the prayers of the bill of complaint, the cause apparently being presented and decided there without knowledge of the repealing act of 1923.

The repealing act was first brought into the case by the appellee's brief in this court; was considered at the argument; and counsel for the appellant have filed a supplemental brief giving us the benefit of their views of the situation.

The four assignments of error can be conveniently considered together, as they raise differing aspects of the contention that the Milwaukee marriage was void ab initio, and consequently incapable of becoming the basis of a valid decree of divorce or alimony in the District of Columbia.

█ In the view we take of the questions presented, it is not necessary to determine to what extent, if at all, the prohibiting statute had extraterritorial effect, since the two statutes must be regarded in pari materia, and the salutary and remedial provisions of the repealing act must be given at least as wide an operation as the penal provisions of the act it was designed to cure.

And it is noteworthy that the prohibiting provision of the Illinois statute does not undertake to retain any jurisdiction of the divorce proceedings, as against a possible marriage in disregard of the act, which is done in some other statutes of like character, as in Wisconsin and Virginia.

For, while the statute is highly penal, as exposing one violating it by another marriage, not only to annulment of that marriage but to imprisonment in the penitentiary as well, it does not undertake to restore in any measure the status quo ante bellum and to invalidate the second marriage by reviving the first to any extent.

Consequently, the Illinois divorce is good; it is not attacked in this proceeding; and the plaintiff there, who was plaintiff here, was entitled to marry except for the temporary disqualification of the statute which was carried into the decree.

Again, the language of the Illinois statute, that, if a divorced party shall marry within a year, "said marriage shall be held absolutely void," may be regarded as contemplating a judicial proceeding in which it should be so declared, and does not go so far as the language of our Code regarding prohibited marriages which "shall be absolutely void ab initio, without being so decreed, and their nullity may be shown in any collateral proceedings." D. C. Code, T. 14, c. 1, § 1.

We find the term "void" used with many modifications and shades of meaning, even in legislative enactments and judicial decisions, and the same or similar acts described as "void"; "absolutely void"; "forever void"; "void without decree"; and "null and void to all intents and purposes whatsoever."

As Chancellor Kent puts it: "There is in our books, great looseness, and no little confusion in the use of the terms void and voidable, growing perhaps in some degree out of the imperfection of language." 2 Kent. Com. 234; 7 Bac. Ab. 64, "Void and Voidable."

A situation very similar in principle to the present case, as involving both a prohibiting and a validating statute, and the effect thereof on an extraterritorial marriage, was considered at length by the Court of Appeals of Maryland in Harrison v. State, 22 Md. 468, 85 Am. Dec. 658.

In that case Harrison and his niece, both residents of Maryland, were married in Washington in violation of a Maryland statute declaring that "such marriages shall be void."

The couple returned to live and die in Maryland, leaving children and property there.

After the death of Harrison, a nephew claimed a share in his estate to the exclusion of the children of the marriage, on the ground that the marriage was a nullity ab initio in Maryland.

After full consideration, the court decided that the operation of the term "void" is an open question, to be decided in each instance by the connection and circumstances of its use, and that a marriage declared by statute to be void is not necessarily void ab initio, or whenever it may be brought incidentally into question, but only from the time its nullity is pronounced by a court of competent jurisdiction. Not void ipso facto, but void only after judgment thereon.

And the healing power of the validating act of Maryland, passed seventy years after the prohibiting statute, was held to prevent subsequent proceedings to attack the marriage, such a statute operating to confirm and to ratify the marriage, to quiet the possession and assure the title of children born in wedlock by giving it the sanction of law.

"Where the parties contracting marriage labor under legal disabilities, the contract is liable to be dissolved by the Courts or affirmed by the Legislature." Harrison v. State, supra.

And the trial court, having held that the marriage was void ab initio and not validated by the later act, was reversed.

The doctrine of the Harrison Case has long been regarded as the settled law of Maryland. Dimpfel v. Wilson, 107 Md. 336, 68 A. 561, 13 L. R. A. (N. S.) 1180, 15 Ann. Cas. 753; Harlane Law of Domestic Relations in Maryland, pp. 16 and 17.

And this court has affirmed that doctrine in respect of the marriage of a Maryland man with his stepdaughter, the parties contracting a ceremonial marriage in Ohio; returning to Maryland; and continuing residence there until the death of the husband, after which litigation arose in settlement of his estate touching certain property in the District of Columbia, which drew into question the validity of the Ohio marriage.

This marriage fell into the same statutory class as the marriage in the Harrison Case, denounced by the Maryland act as void, but this court held it to be voidable only, for "no steps having been taken during the lifetime of the parties, to avoid it, appellant was his lawful wife at the time of his death, and must be so considered in this District."

And the trial court here, having held the Ohio marriage void ab initio, was accordingly reversed. Tyler v. Andrews, 40 App. D. C. 100.

So in the present case, Mrs. Abramson's divorce in Illinois being good, her marriage in Wisconsin in violation of the Illinois statute may have exposed her to all the penalties of that statute during its life and her residence in Illinois.

But no steps attacking the marriage, or the status created thereby, having been taken before the repealing act went into effect, operating "in all cases where a marriage has been contracted in violation" of the earlier statute, it is now too late to attack that marriage here.

The statutory infirmity having been cured by the same power that created it, property rights and obligations having been assumed in this jurisdiction by the parties to the marriage on the faith of the marriage, and a child having been born here to the marriage, we hold that marriage to be now neither void nor voidable, but valid, and properly recognized as valid by the trial court.

The decree is affirmed, with costs.

Affirmed.