**THOMAS v. MURPHY et al.**

No. 7256.

United States Court of Appeals for the District of Columbia.

Decided Oct. 9, 1939.

William A. Powell and Otho D. Branson, both of Washington, D. C., for appellant.

Vincent L. Toomey, of Washington, D. C., for appellees.

Before EDGERTON, VINSON, and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

In this action of ejectment, the question is plaintiff's legitimacy. She claims as the heir of William M. Murphy. The declaration alleges the following facts, among others. In February, 1904, William M. Murphy and Elizabeth Dixon agreed to become husband and wife. They thereupon cohabited as such in the District of Columbia, and continued to do so for years, including years subsequent to 1918. Plaintiff was born to them in October, 1905. In 1918, William's wife Harriet obtained a divorce, in the District, on the ground of William's adultery with Elizabeth. After 1918, William acknowledged plaintiff as his child.

To this declaration the defendants demurred. The demurrer was sustained, and plaintiff appealed. We think the demurrer should have been overruled.

 If William and Elizabeth had both been competent to marry in 1904, a common-law marriage between them would have occurred then.[1] William's marriage to Harriet was terminated by divorce in 1918. He and Elizabeth continued to live as husband and wife. It has been widely held that the removal of an impediment while parties continue to live together as husband and wife gives rise to a common-law marriage.[2] An analogous case is Travers v. Reinhardt,[3] in which this court and the Supreme Court held that parties who lived as husband and wife in Maryland, where common-law marriage was not permitted, and then in New Jersey where it was permitted, were validly married in New Jersey. Commonly the removed impediment consists, as it does in the present case, of the previous marriage of one of the parties. Cases where, as here, one or both of the parties knew of the impediment, have sometimes been treated as exceptions to the general rule that the mere removal of the impediment, with continued cohabitation, results in a common-law marriage; on the theory that the original intent was meretricious, and evidence of a changed intent is therefore necessary.[4] But the general rule, which finds a common-law marriage upon the removal of the impediment, has sometimes been applied though one or both of the parties knew of the impediment.[5] Since marriage is preferable to concubinage, this result seems socially sound. It is also logical. Where cohabitation was, at the outset, illicit from choice, because there was nothing to prevent a valid marriage, it is reasonable to require some evidence of a change of intention before finding a marriage; but where, as in the present case, marriage at the outset was impossible, there is no good reason for demanding such a change. The intent of plaintiff's parents may well have been, as the declaration alleges that it was, matrimonial from the first, although one or both of them knew that this intent could not at first be realized. We intend much that we cannot achieve. It may be supposed "that the parties intended matrimony as soon as they lawfully could, and by their continued conduct after the removal of the impediment actually married by agreement."[6] We think that, on the facts stated in the declaration, a common-

---

[1] Hoage v. Murch Bros. Construction Co., 60 App.D.C. 218, 50 F.2d 983.

[2] Cf. Rhodes v. Rhodes, 68 App.D.C. 313, 314, 96 F.2d 715. Dicta to the contrary in Friedenwald v. Friedenwald, 57 App.D.C. 13, 16 F.2d 509, certiorari denied 273 U.S. 763, 47 S.Ct. 476, 71 L. Ed. 879, relate to a case in which the parties had attempted to marry ceremonially and no intent appeared, at any time, to be married by mere mutual consent or by consent plus cohabitation. In that case there was, as the majority of the court interpreted the record, no cohabitation after the removal of the impediment.

[3] 205 U.S. 423, 27 S.Ct. 563, 51 L.Ed. 865, affirming 25 App.D.C. 567.

[4] e. g., Cartwright v. McGown, 121 Ill. 388, 12 N.E. 737, 2 Am.St.Rep. 105; Lanham v. Lanham, 136 Wis. 360, 117 N. W. 787, 17 L.R.A.,N.S., 804, 128 Am.St. Rep. 1085.

[5] e. g., The Breadalbane Case (Campbell v. Campbell), L.R. 1 H.L.Sc. 182. In Matter of Haffner's Estate, 254 N.Y. 238, 172 N.E. 483; University of Michigan v. McGuckin, 62 Neb. 489, 87 N.W. 180, 57 A.L.R. 917, affirmed on rehearing, 64 Neb. 300, 89 N.W. 778, 57 A.L. R. 917. Sometimes, though both parties knew of the impediment, a marriage after its removal has been "presumed." Adger v. Ackerman, 8 Cir., 115 F. 124, 130 (opinion by Judge Sanborn).

[6] Madden, Persons and Domestic Relations, p. 74.

law marriage between plaintiff's parents occurred after William's divorce from Harriet.

The defendants rely on the fact that the Code of the District then declared that after a divorce for adultery "the innocent party only may remarry."[7] This provision was not eliminated until August 7, 1935,[8] and the record does not show whether or not plaintiff's parents lived together after that date. As far as appears, then, her father may have been forbidden by law to marry her mother throughout his cohabitation with her. This court has held that "a husband or wife, divorced on the ground of adultery, who defies the ban of section 966, should not be permitted to take advantage of his or her own wrong." On that ground, a divorced wife who had remarried in violation of the prohibition was prevented from maintaining a suit for divorce against her new husband. But the court did not treat the prohibited marriage as void; on the contrary, it said that the wife "should be left as found in the relation unlawfully undertaken." It said also that "judicial cognizance may be taken of such status in order to preserve and protect the rights of children and other innocent persons,"[9] a dictum which covers the present case. "The offspring * * * are not estopped from showing the dissolution of the first marriage. They do not occupy the position of their criminal parent. * * * The Act * * * does not declare this second marriage void."[10] "Courts do not look with favor on the construction of a law, if not unavoidable, which declares children illegitimate"[11] and stigmatizes as meretricious a relation which the parties intended as matrimonial.

Even as to the contracting parties, the prohibited remarriage is not void.[12] The Code provides that incestuous marriages, and marriages of persons already married, "shall be absolutely void ab initio, without being so decreed, and their nullity may be shown in any collateral proceedings."[13] As this section does not apply to the prohibited remarriage of a divorced person,[14] it fairly follows that such a marriage cannot, in general, be attacked in collateral proceedings. The District Court has held that it is only voidable in a suit brought for that purpose, and that such a suit cannot be maintained by the prohibited party. Sammons v. Sammons, 46 W.L.R. 39. Under similar statutes it has been held that the surviving wife of the prohibited person becomes his lawful widow,[15] and even that the prohibited marriage has enough validity to make a later marriage bigamous.[16] The Supreme Court has held valid in the District of Columbia, as a basis of dower rights, the remarriage elsewhere of the prohibited party to a District di-

---

[7] 1901 Code, Sec. 966, 1929 Code, Tit. 14, Sec. 63.

[8] 49 Stat. 539, c. 453, Sec. 1; D.C.Code 1929, T. 14, Sec. 63, as amended, D.C. Code Supp. II, 1935, T. 14, § 63.

[9] Olverson v. Olverson, 54 App.D.C. 48, 49, 293 F. 1015, 1016.

[10] Park v. Barron, 20 Ga. 702, 703, 65 Am.Dec. 641.

[11] Tillinghast v. Tillinghast, 58 App.D. C. 107, 109, 25 F.2d 531, 533.

[12] Of the cases which are cited as holding that the prohibited remarriage of a divorced person is void, some are based on statutes which expressly declare it void. State v. Fenn, 47 Wash. 561, 92 P. 417, 17 L.R.A.,N.S., 800; In re Elliott's Estate, 165 Cal. 339, 132 P. 439; Wilson v. Cook, 256 Ill. 460, 100 N.E. 222, 43 L. R.A.,N.S., 365; Succession of Gabisso, 119 La. 704, 44 So. 438, 11 L.R.A.,N.S., 1082, 121 Am.St.Rep. 529, 12 Ann.Cas. 574. In some, a party to the prohibited marriage was or had been awarded a decree of annulment in a suit brought for that purpose, and suggestions that the marriage was void before such decree are therefore obiter. Gardner v. Gardner, 98 Misc. 411, 162 N.Y.S. 365; Ovitt v. Smith, 68 Vt. 35, 33 A. 769, 35 L.R.A. 223; Rand v. Bogle, 197 Ill.App. 476. And in some it was held that, since the statutory prohibition covered only the period allowed for appeal from the divorce decree, the first marriage was not terminated until that period had elapsed. Hooper v. Hooper, 67 Or. 187, 135 P. 525; Wilhite v. Wilhite, 41 Kan. 154, 21 P. 173. A small minority of cases actually hold the merely prohibited marriage void, and subject to collateral attack. Cf. notes, L.R.A.1916C, 748; 69 A.L.R. 537.

[13] D.C.Code, 1901, Sec. 1283, Code, 1929, Tit. 14, Sec. 1.

[14] Loughran v. Loughran, 292 U.S. 216, 224, 54 S.Ct. 684, 78 L.Ed. 1219, rehearing denied, 292 U.S. 615, 54 S.Ct. 861, 78 L.Ed. 1474.

[15] Woodward v. Blake, 38 N.D. 38, 164 N.W. 156, L.R.A.1918A, 88, Ann.Cas. 1918E, 552.

[16] State v. Yoder, 113 Minn. 503, 130 N.W. 10, L.R.A.1916C, 686; Crawford v. State, 73 Miss. 172, 18 So. 848, 35 L. R.A. 224. But cf. State v. Sartwell, 81 Vt. 22, 69 A. 151; 130 Am.St.Rep. 1017.

vorce. The Court observed that Section 966 does not "in terms declare the remarriage void," and that "illegality constitutes no defense when merely collateral to the cause of action sued on."[17] Even a statute which does declare certain marriages void is sometimes construed to make them merely voidable in proceedings brought for that purpose during the lifetime of the parties.[18] In Abramson v. Abramson[19] this court said: "The language of the Illinois statute, that, if a divorced party shall marry within a year, 'said marriage shall be held absolutely void,' may be regarded as contemplating a judicial proceeding in which it should be so declared, and does not go so far as the language of our Code regarding prohibited marriages which 'shall be absolutely void ab initio, without being so decreed * * *.'"

The Code provides that "If any man shall have a child or children by any woman whom he shall afterwards marry, such child or children, if acknowledged by the man, shall, in virtue of such marriage and acknowledgment, be legitimated and capable in law of inheriting and transmitting heritable property as if born in wedlock."[20] After 1918, plaintiff's father acknowledged her as his daughter. It follows that, on the facts stated in the declaration, plaintiff is the legitimate daughter and heir of William M. Murphy.

VINSON, J., concurs in the result.

Reversed.

---

[17] Loughran v. Loughran, supra, 292 U. S. at pages 226, 228, 54 S.Ct. at page 688, 78 L.Ed. 1219.

[18] Tyler v. Andrews, 40 App.D.C. 100.

[19] 60 App.D.C. 119, 121, 49 F.2d 501, 503.

