303 F.2d 408
 112 U.S.App.D.C. 397
 Ernestine MATTHEWS, Appellant,
v.
Theodore BRITTON, Deputy Commissioner, Bureau of Employees'
Compensation, Aldon Construction Company, Inc.,
and New Amsterdam Casualty Company, Appellees.
 No. 16498.
 United States Court of Appeals District of Columbia Circuit.
 Argued Nov. 2, 1961.
Decided April 19, 1962, Petition for Rehearing En Banc
Denied En Banc May 18, 1961.
 
 Mr. Joseph C. Waddy, Washington, D.C., with whom Messrs. William C. Gardner and William B. Bryant, and Larry C. Williams, Washington, D.C., were on the brief, for appellant.
 Mr. Herbert P. Miller, Asst. Sol., Dept. of Labor, with whom Messrs. Charles Donahue, Sol., Dept. of Labor, David C. Acheson, U.S. Atty., and Nathan J. Paulson, Asst. U.S. Atty., were on the brief, for appellee, Britton.
 Mr. William E. Stewart, Jr., Washington, D.C., with whom Messrs. Richard W. Galiher and Julian H. Reis, Washington, D.C., were on the brief, for appellees Aldon Const. Co., Inc., and New Amsterdam Cas. Co. Mr. Harvey B. Bolton, Jr., Washington, D.C., also entered an appearance for appellees Aldon Const. Co. and New Amsterdam Cas. Co.
 Before Mr. Justice BURTON, retired,* PRETTYMAN, Senior Circuit Judge, and BAZELON, Circuit Judge.
 Mr. Justice BURTON.
 
 
 1
 In this case the appellant, Ernestine Matthews, claims that certain death benefits are due her as the surviving common-law wife of Henry Matthews under the Longshoremen's and Harbor Workers' Compensation Act.[1] Her claim was heard by the Deputy Commissioner of the Bureau of Employees' Compensation in the United States Department of Labor. He found that she was not and never had been the lawful wife of Henry Matthews, under common law of otherwise. Consequently, he denied her the death benefits to which she claimed to the entitled. She then asked the United States District Court for the District of Columbia to set aside the Deputy Commissioner's order. That court denied her motion for summary judgment, but granted defendants' motion for summary judgment and dismissed the action. From that order Ernestine took this appeal.
 
 
 2
 The principal issue here is whether the Deputy Commissioner correctly applied existing law in finding that Ernestine was not the surviving wife of the deceased employee. For the reasons hereafter stated, we remand the case to the District Court with directions to submit it to the Deputy Commissioner for reconsideration in the light of this opinion.
 
 
 3
 The material facts are undisputed. Commencing in 1935 and terminating with the death of Henry Matthews in 1957, Ernestine and he lived together as though they were married to one another. For example, they cohabited and introduced each other as man and wife. They conducted business transactions on occasion in the name of Ernesting 'Matthews.' Thus there was substantial uncontradicted evidence of their cohabitation and of their reputation for living together as husband and wife. Ernestine testified that she had taken Henry Matthews 'as (her) husband,' and that he asked her to come and live with him 'as man and wife' to which arrangement she agreed. She testified unequivocally that they considered each other to be husband and wife. However, in 1919, Ernestine had legally married one William Johnson and had remained married to him until he secured a divorce in 1951. In 1951 Ernestine and Henry Matthews knew that divorce proceedings had been instituted and that a divorce from William Johnson would be the likely result. But in the absence of a valid divorce, Ernestine's marriage to Johnson precluded any other lawful marriage by her, no matter how much she and Henry purported to be lawfully married or how much they acted as if they were married.
 
 
 4
 By judicial decision in the District of Columbia, common-law marriage is recognized. The question of its recognition was presented to this Court in Hoage v. Murch Bros. Const. Co., 60 App.D.C. 218, 50 F.2d 983 (1931). The Court at that time reasoned that, since marriage was a matter of civil law, no form of religious ceremony was required. It held that, inasmuch as the relevant Acts of Congress did not indicate a contrary intent, a marriage that was valid at English common law was similarly effective under the common law of the District of Columbia. Consequently, an agreement 'per verba de praesenti to be husband and wife (and) consummated by cohabitation' was sufficient.[2]
 
 
 5
 Nevertheless, as long as the impediment of Ernestine's lawful marriage to Johnson existed, she and Henry Matthews could not lawfully be or become husband and wife. However, it is settled that if parties agree to be husband and wife in ignorance on an impediment to lawful matrimony, then the removal of that impediment results in a common-law marriage between the parties if they have continued to cohabit and live together as husband and wife. Parrella v. Parrella, 74 App.D.C. 161, 120 F.2d 728 (1941); McVicker v. McVicker, 76 U.S.App.D.C. 208, 130 F.2d 837 (1942). Similarly, in Thomas v. Murphy, 71 App.D.C. 69, 107 F.2d 268 (1939), this Court has held the same result obtains even if the parties have knowledge of the impediment at the time that they agree to be married. It is not to be expected that parties once having agreed to be married will deem it necessary to agree to do so again when an earlier marriage is terminated or some other bar to union is eliminated.
 
 
 6
 Appellees content that this Court's recent decision in United States Fidelity & Guaranty Co. v. Britton, 106 U.S.App.D.C. 58, 269 F.2d 249 (1959), in effect overrules Thomas v. Murphy, supra. We do not agree. Not only was the Murphy case cited with approval in the Fidelity & Guaranty opinion,[3] but this Court expressly noted in its opinion that the alleged wife did not testify that 'there was mutual consent or agreement (to marry) at any time, nor that she had consented or agreed (to be married).'[4] Thus the holding of that case is that if there was no agreement to be married, either before or after the removal of an impediment, no marriage can take place.
 
 
 7
 We are of the view that Thomas v. Murphy still constitutes the law of the District of Columbia. If Ernesting and Henry Matthews agreed to be married before the impediment was removed and continued thereafter to cohabit and live together as husband and wife, a commonlaw union between Ernesting and Henry was effected when Johnson was awarded the divorce. The record considered as a whole would support such a finding. However, the Deputy Commissioner, under the impression that the possibility of agreement prior to the removal of the impediment was irrelevant, made no findings on that matter; nor did he specifically find that Ernestine and Henry continued to cohabit and live together after 1951.
 
 
 8
 Accordingly, we reverse the order granting summary judgment and direct the District Court to set aside the Deputy Commissioner's determination and remand the case to him for further proceedings consistent with this opinion.
 
 
 9
 So ordered.
 
 
 10
 PRETTYMAN, Senior Circuit Judge (concurring in part and dissenting in part).
 
 
 11
 I agree with the statement of facts in the court's opinion, but I would emphasize a few as being particularly material to a decision.
 
 
 12
 1. The record discloses that in 1935 Ernestine and Henry mutually agreed to live together as man and wife and began their cohabitation which was to continue uninterrupted until Henry's death in 1957. Ernestine testified (and this testimony was not contradicted) that she did not regard Johnson as her legal husband and that she and Henry considered themselves as husband and wife at all times while they were living together.
 
 
 13
 2. The divorce papers were served on Ernestine. She inquired as to what she should do. She was advised by the marshal that she need do noting if she did not wish to contest the divorce. Thereupon she tore the papers up. When she told Henry about the service, he hugged and kissed her and said, 'Well, that make you more my wife now than ever.' From these facts it appears most likely that the parties assumed the decree had been granted.
 
 
 14
 3. Although Ernestine and Henry did not, after the divorce was granted, make a formal reaffirmation in haec verba of their intention to live as husband and wife, they performed acts which constituted in substance such a declaration. For example, after the divorce, Frnestine, as 'Mrs. Ernestine Matthews', took out two insurance policies naming Henry as beneficiary. Also after the divorce she incurred bills as Mrs. Ernestine Matthews. Each of these acts was in effect a declaration that she considered hereself to be Mrs. Matthews. Furthermore a continuing intention and agreement to be man and wife is implicit in the parties' very manner of living day by day for six years after the removal of the impediment.
 
 
 15
 I would conclude from the facts that these parties met the test for a commonlaw marriage suggested in United States Fidelity & Guaranty Co. v. Britton.[1] This court stated in that case that:
 
 
 16
 'Cohabitation which was meretricious in its inception is considered to have the same character throughout its continuance after the removal of a real or supposed impediment. Cohabitation continued thereafter could not ripen into a common-law marriage unless it was pursuant to a mutual consent or agreement to become husband and wife made after the removal of * * * (the) barrier.'
 
 
 17
 The test in this 'unless' clause, I take it, was meant to be one of substance and not one of technical formality. We abandoned a requirement that strict formalities be observed in this filed when we recognized common-law marriage. Moreover the people with whom we are dealing in these situations are not likely to be perceptive in respect to technicalities.
 
 
 18
 I do not approve the extension of the doctrine of common-law marriage; quite the contrary. But we have such a doctrine firmly established in this jurisdiction, and I think if we are to have it we must apply it on the basis of realities and not on the basis of formalities. It seems to me that to recognize the acts of Ernestine and Henry in respect to, and after, the divorce as declarations of an intent to live as husband and wife, is not to expand the doctrine; rather it is merely to make a conclusion of fact based upon substance.
 
 
 19
 In my view of this case we need not decide the precise point of time at which this common-law marriage was established. That is, we need not here decide whether the granting of the divorce ipso facto caused the marriage to be then effected. The only question before us is whether the parties were married at the time of Henry's death in 1957. I think it is sufficient to find that upon the facts the marriage had bee established prior to, and existed on, that date.
 
 
 20
 I would reverse.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 294(a)
 
 
 [1]
 44 Stat. 1424, 33 U.S.C.A. 901 et seq., made applicable to the District of Columbia by 45 Stat. 600, 36-501, D.C. Code 1951, 33 U.S.C.A. 903 note
 
 
 [2]
 60 App.D.C., at 220, 50 F.2d at 985
 
 
 [3]
 106 U.S.App.D.C. at 63, n. 4, 269 F.2d at 254, n. 4
 
 
 [4]
 106 U.S.App.D.C., at 62, 269 F.2d, at 253
 
 
 [1]
 106 U.S.App.D.C. 58, 62-63, 269 F.2d 249, 253-254 (1959)