WILLIAM CONN *et al*. v. MARY A. CONN.

No. 35.

1. DIVORCE — *Jurisdiction — Collateral Attack.* A finding by the court of jurisdiction of the defendant in a suit for divorce will be presumed to have been based upon sufficient jurisdictional facts, and when the validity of the decree of divorce granted by such court is attacked in a subsequent collateral proceeding, the want of necessary jurisdictional facts must be affirmatively shown before such decree will be held to be invalid.

2. MARRIAGE — *Validity.* A marriage consummated between the plaintiff in a divorce suit and a third person 16 days after the decree of divorce was entered, but after the said decree became final, will not be pronounced void simply upon the ground that the statute declares that it shall be unlawful for either party to such suit to marry until the expiration of six months from the entry of the decree of divorce.

MEMORANDUM.—Error from Cloud district court; F. W. STURGES, judge. Action for partition, brought by Mary A. Conn against William Conn and others. Judgment for plaintiff. Defendants bring the case here. Affirmed. The opinion herein was filed December 14, 1895.

The statement of the case, as made by CLARK, J., is as follows :

The defendant in error, as plaintiff, brought this suit in the district court of Cloud county for the partition of certain real estate in which she claimed an inter-

est as the widow of one Lorenzo D. Conn, deceased. The vital question presented by the pleadings was as to whether or not the plaintiff below was the lawful wife of the said Conn at the time of his death. The issues were tried by the court on October 6, 1890, and special findings of fact were made, together with conclusions of law thereon. The court found that on the 4th day of December, 1887, the plaintiff was married, in Cloud county, Kansas, to the said Lorenzo D. Conn, who was at that time a widower, and that immediately upon her marriage she went with him to reside upon the homestead of said Conn and his family, in said Cloud county, where the plaintiff and said Conn continued to live and reside as husband and wife until his death, which occurred on the 4th day of February, 1888 ; that the deceased left no other heirs than the plaintiff and the defendants herein, the latter being his children by a former wife ; that prior to the date of plaintiff's marriage with Conn she had been the wife of one George P. Curtis ; that on the 22d day of August, 1887, she filed in the Cloud county district court her petition for a divorce from said Curtis, alleging as grounds therefor abandonment for more than a year ; that the petition was on that day verified, which verification also contained an allegation of defendant's non-residence, and that thereafter, on the 26th day of August, 1887, she caused notice of the pendency of the suit to be published, and such publication continued in a newspaper printed and published and of general circulation in Cloud county for more than three weeks, and that said notice specified that the defendant was required to answer on or before October 10 thereafter ; that at the regular October term, 1887, of said court, and on the 18th day of November of that year, said cause came on regularly to be heard, the plaintiff ap-

pearing in person and by attorney, defendant not appearing; and upon the hearing had the court found, among other things, that the defendant, George P. Curtis, had been duly and legally notified of the institution and pendency of the suit; that he had wilfully abandoned the plaintiff for more than one year prior to the bringing of the suit, and that plaintiff was entitled to a divorce from him, and decreed the same; that there is not among the files and papers of the case any affidavit that the residence of the said George P. Curtis was unknown to the plaintiff, and could not be ascertained by any means within her control; that the record does not show, nor was any evidence offered tending to show, that any such affidavit was ever made and filed; that there is among the papers of the case an envelope on which postage is paid, and inclosed in which there is a copy of the petition and of the notice of publication, which envelope is addressed in the handwriting of the then attorney of plaintiff, to the defendant George P. Curtis, and bears the return stamp of the post-office at Clay Centre; that there was no notice of an intention to prosecute proceedings in error to the supreme court to reverse the judgment and decree of the district court given in open court and noted on the journal thereof within three days after the entry of said decree, nor was such notice ever given, nor was any petition in error and transcript of the proceedings in the case filed in the supreme court within three months after the rendition of said decree, nor has any such ever been filed in said case, nor have any proceedings ever been had, commenced, or attempted, to reverse, open up or set aside said decree, and that the period of six months from the rendition of the

judgment or decree had not expired at the date of her marriage to the said Conn.

The conclusions of law as drawn from these facts so found by the court were, that as the divorce was granted upon service by publication duly had, upon affidavit therefor duly made and filed, together with service by sending a copy of the petition and publication notice at the time and in the manner required by law, as is presumed from the finding of the court that the defendant had been legally notified of the institution and pendency of the suit, and as no notice was given and entered on the journal of the court within three days from the entry of said decree of an intention to prosecute proceedings in error to the supreme court, the judgment and decree, after the expiration of said three days, became absolute and final, and the marriage of the plaintiff to Lorenzo D. Conn within 16 days from the rendition of the decree of divorce was legal, valid, and binding; and that as the divorce of the plaintiff from her former husband, George P. Curtis, and her marriage with Conn were valid and not void, and as the latter died intestate, leaving the plaintiff and defendants as his heirs and only heirs, the real estate was subject to partition between the plaintiff and defendants, the plaintiff being entitled to one-half thereof. The defendants moved for judgment in their favor upon the special findings of fact, which motion was overruled by the court, to which the defendants duly excepted. A motion for a new trial was also overruled, to which the defendants duly excepted, and judgment was entered decreeing partition of the real estate as prayed for in the petition. The defendants have brought the case to this court on a transcript of the record, and assign for error the

overruling of their motion for judgment in their favor on the special findings of fact and their motion for a new trial, and allege that the court erred in its conclusions of law from the facts as found.

*Caldwell & Ellis*, for plaintiffs in error.

*J. W. Sheafor*, and *C. L. Botsford*, for defendant in error.

The opinion of the court was delivered by

CLARK, J.: The vital question presented to this court is as to whether or not the defendant in error was the lawful wife of Lorenzo D. Conn at the time of his death. The first contention of plaintiffs in error is, that the court did not acquire jurisdiction over the defendant in the divorce suit, and that because of that fact the decree that was entered divorcing the plaintiff from George P. Curtis and the subsequent marriage of the plaintiff herein to the said Lorenzo D. Conn were absolute nullities. The findings of fact, however, do not support this contention of the plaintiffs in error. The fact that the court found that neither the files and papers of the case nor the records of the court nor the evidence upon the trial show that an affidavit was made and filed that the residence of Curtis was unknown to the plaintiff, and could not be ascertained by any means within her control, raises the presumption that such affidavit was not made and filed; but this presumption, and the finding of fact concerning the envelope addressed to George P. Curtis and its contents, throw no light upon the question presented. These findings do not affirmatively establish the fact that a copy of the petition, with a copy of the publication notice attached thereto, was not within three days after the first pub-

lication was made inclosed in an envelope addressed to the defendant at his place of residence, postage paid, and deposited in the nearest post-office, as required by the statute to complete the service by publication, in the absence of the making and filing of an affidavit that such residence is unknown to the plaintiff, and cannot be ascertained by any means within her control. The plaintiffs in error alleged in their answer that the decree of divorce was void for want of jurisdiction of the court over the defendant, George P. Curtis, and the burden of proof to establish that allegation was upon them ; and, in the absence of a finding of a want of jurisdiction, this court must presume that that allegation was not supported by the evidence introduced upon the trial, especially as it appears that at the hearing of the divorce suit the court found that it had acquired such jurisdiction. True, there are attached to the findings of the court certain exhibits which are probably copies of certain documentary evidence introduced upon the trial, but, as the evidence cannot be brought upon the record in this manner, the exhibits must be wholly ignored ; and the evidence not having been preserved in the record, this court cannot say that the trial court erred in its findings of fact.

As it must be presumed from the record that the plaintiff below was lawfully divorced from her husband on November 18, 1887, the remaining question to be determined is as to whether or not the marriage of the defendant in error to Lorenzo D. Conn 16 days after the decree of divorce was entered was valid? The statute in force at the time the decree was entered, as well as at the time of the marriage of the defendant in error to Lorenzo D. Conn, reads as follows :

"A divorce granted at the instance of one party

shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other; and no proceeding for reversing or vacating the judgment or decree divorcing said parties shall be commenced unless within six months after the rendition of said judgment or decree, and during said six months and the pendency of said proceeding for reversing or vacating said judgment or decree, it shall be unlawful for either of said parties to marry, and any person so marrying shall be deemed guilty of bigamy : *Provided*, Such decree shall be final; and no proceedings in error to the supreme court shall be allowed or taken unless a notice of an intention to prosecute such proceeding in error be given in open court and noted on the journal of the court within three days after the entry of the decree or judgment, and the petition in error and transcript be filed in the supreme court within three months after the rendition of such judgment or decree." (Laws of 1881, ch. 126, § 1.)

In this state a marriage contract is to be considered as a civil contract. Paragraph 3739, General Statutes of 1889, prohibits certain persons therein named from entering into the marriage relation with each other, and declares any marriages prohibited by that paragraph to be absolutely void; and the paragraph following subjects the parties who contract marriage contrary to the provisions of said paragraph 3739 to punishment by fine and imprisonment. That statute, however, has no application to the facts in this case. The statute under construction provides that a decree of divorce shall operate as a dissolution of the marriage contract, and shall be final, unless a notice of an intention to prosecute proceedings in error for reversing or vacating the decree shall be given in open court and noted on the journal of the court within three days after the entry of the decree, to be followed

by the filing of the petition in error and transcript in the supreme court within three months after the rendition of such decree. The record shows that no such notice was ever given, nor were any such proceedings in error ever commenced, although nearly three years had elapsed when this action was tried. We think, under the findings of fact, the presumption is that the plaintiff, within the time limited and in the manner required by law, sent the defendant, Curtis, a copy of the petition and publication notice, and this, coupled with the finding as to the notice by publication, operated to give the court jurisdiction, and as no notice of intention to prosecute proceedings in error was given in open court and noted on the journal of the court within three days after the entry of the decree, the decree so entered then became final and the parties thereto were no longer husband and wife.

Our attention has been called to the case of *Wilhite v. Wilhite*, 41 Kan. 154, in support of the contention that the marriage of plaintiff to Lorenzo D. Conn before the expiration of six months from the rendition of the decree was absolutely void. The statutes of Oregon declared that the decree of divorce should have the effect to terminate the marriage, except that neither party should be capable of contracting marriage with a third person until the time limited in which an appeal could be taken had expired ; and the court held that under that law a decree of divorce does not absolutely terminate the marriage relation nor entirely free the parties from its obligation and liabilities until the expiration of the time allowed in which to take an appeal. And in the case of *Smith v. Fife*, 30 Pac. Rep. (Wash.) 1059, cited by counsel, the statute of Washington, which contains a provision that neither party should be capable of contracting

marriage with a third person until the period in which an appeal may be taken under the provisions of the civil-practice act had expired, received a similar construction. It will be observed that the laws of both of these states, unlike section 1, chapter 126, Laws of Kansas, 1881, make the parties to the divorce proceedings *incapable of contracting marriage* within the time limited for taking an appeal; while our statute simply declares that it shall be *unlawful* for either party to marry within six months after the decree is entered. It does not in terms pronounce them incapable of entering into the marriage relation within that period, nor does it declare void a marriage solemnized in violation of the prohibition of the statute. Our supreme court, in the case of *The State v. Walker*, 36 Kan. 297, recognized this distinction between a statutory prohibition and a declaration of incapacity to contract. In that case it is held that "punishment may be inflicted upon those who enter the marriage relation in disregard of the prohibited statutory requirements, without rendering the marriage itself void"; and on page 303 it is said that by the terms of the marriage act marriage is declared to be a civil contract, and that, in the absence of all civil or statutory regulations, the mutual present assent to immediate marriage of persons capable of assuming that relation constitutes a marriage at common law, and its validity will be sustained unless some statute expressly declares it to be void. In *Stevenson v. Gray*, 17 B. Mon. 193, Chief Justice Marshall, in construing the Kentucky statute which prohibited a marriage between a nephew and his uncle's wife, said:

"This is not a case of ordinary contract; and though it be regarded as prohibited under the penalty, it was not absolutely void, because it was not so declared by

the statute; and it is not now even voidable, because the statute does not provide for nor intend its being avoided after the death of one of the parties; and being now to be regarded and treated as a valid marriage, . . . it is also to be regarded as having all the consequences of a valid marriage, . . . and as therefore entitling the surviving husband to all the rights of a lawful husband in the real and personal estate of his deceased wife."

In 1 Bishop on Marriage and Divorce, the following rules are laid down:

SEC. 283. "In considering whether or not a provision is to be deemed of the one class or the other [mandatory or directory], not only its words but the nature of the subject should be taken into account. Marriage existed before statutes; it is of natural right; it is favored by the law. Hence, in reason, any commands which a statute may give concerning its solemnization should, if the form of words will permit, be interpreted as mere directions to the officers of the law and to the parties, not rendering void what has been done in disregard thereof. Consequently, the doctrine has become established in authority that a marriage good at common law is good notwithstanding the existence of any statute on the subject, *unless the statute contains express words of nullity*."

SEC. 286. . . . "If marriage were an ordinary contract, and if it were executory only, not executed, the rule of interpretation under consideration would not apply. But, viewed as a contract, it is, as we have seen, executed. And the common rule in executed contracts of the ordinary sort is, that what has been done contrary to the commands of law is valid, and not liable to be avoided."

SEC. 304. "With the dissolution" [by a divorce from the bond of matrimony] "the obligations arising from the marriage are completely discharged, and the parties stand in the same position as though such marriage had never been contracted. . . . Upon such a divorce, the *status* of marriage is necessarily

taken from both parties ; so that, as one of the conse-
quences, both are at liberty to form new alliances.''

SEC. 306a. ''If, after the rendition of a divorce sen-
tence '' [which had the effect of authorizing the parties
to remarry], ''a statute should be passed forbidding
the divorced person to contract a new marriage, it
would subject him to indictment on violating it. . .
But, . . . it could not be carried by interpre-
tation so far as to make the marriage null, unless it
also contained an express clause of nullity.''

The statutes of Georgia prohibit one through whose
improper or criminal conduct a divorce has been
granted from marrying during the life of the person
from whom he has been divorced. In construing this
statute, in *Park v. Barron*, 20 Ga. 702, the court held
that by the divorce the marriage was totally dissolved,
and that while a former husband would subject him-
self to the pains and penalties enacted against bigamy
should he contract marriage a second time during the
life of the woman from whom he had been divorced,
yet as he was of full age, and able to contract, and as
the subsequent unlawful marriage was not declared
by the statute to be void, it could not be so held by
the court ; and that a public policy which looks to the
protection of the innocent and unoffending, to the
peace of families and the welfare of society, would
forbid the inference of a purpose on the part of the
legislature, which they have not expressed, that the
marriage of a party against the prohibition of the
statute should be void.

We think that as the decree of divorce entered on
November 18, 1887, became final three days there-
after, because of the failure to give notice in open
court of an intention to prosecute proceedings in er-
ror, and as the statute contained no clause of nullity
regarding a subsequent marriage, nor declared the

parties incapable of contracting marriage within the period of six months from the date of the decree, the marriage of plaintiff below to Lorenzo D. Conn, on December 4, 1887, was valid, although she might be prosecuted for consummating such marriage in violation of the statute. This construction seems to be in accord with the views of the legislature, when, in 1889, the law was amended so as to make absolutely void a marriage by either party to a divorce suit before the expiration of six months from the rendition of the decree, and during the pendency of proceedings in error. As the defendant in error was the wife of said Lorenzo D. Conn at the time of his death, it was proper that the real estate of which the latter died seized should be partitioned among the parties to this suit in the manner directed by the court, and the judgment and decree will be affirmed.

All the Judges concurring.