## STATE v. CLAUDE FRANCIS YODER.[1]

February 17, 1911.

Nos. 16,992—(260).

**Void marriage.**

A marriage contract is a nullity ab initio only where expressly so declared by statute. In such a case it is absolutely void, requiring no judicial decree for its dissolution.

**Voidable marriage.**

A voidable marriage contract arises where, though prohibited by law, it may be ratified or confirmed by the subsequent cohabitation and conduct of the parties, and is valid until dissolved by judicial decree.

**Bigamy.**

A voidable marriage is sufficient upon which to base a prosecution for bigamy, and the fact that the contract is voidable constitutes no defense.

**Remarriage of divorced persons within six months after divorce.**

A remarriage of divorced persons within six months from the date of their divorce, though prohibited by section 3554, R. L. 1905, is valid until dissolved by judicial decree.

Defendant was indicted by the grand jury of Becker county for the crime of bigamy. Defendant demurred to the indictment, and for the purposes of the demurrer only the facts were stipulated. The demurrer was overruled, Taylor, J., and at the request of defendant the case was certified to this court. Affirmed.

[1] Reported in 130 N. W. 10.

---

[Note] Cohabitation as ratification of forced marriage, see note in 27 L.R.A. (N.S.) 805.

*George T. Simpson,* Attorney General, and *Peter F. Schroeder,* County Attorney, for the State.

*A. T. Cole* and *Nye & Dosland,* for defendant.

BROWN, J.

Defendant was indicted and thereby charged by the grand jury of Becker county with the crime of bigamy. Upon arraignment he interposed a general demurrer to the indictment. At the hearing of the demurrer the parties stipulated to certain facts for the consideration of the court in ruling upon the question presented. The demurrer was overruled, and the court certified the question arising from the facts to this court for final determination. The facts, as so agreed upon, are as follows:

In January, 1908, defendant and Inga Marie Yoder, residents and domiciled in the state of North Dakota, were duly married to each other, and thereafter continued to reside together as husband and wife until the first day of May, 1909, when by a decree of divorce entered in the district court of Cass county, North Dakota, the marriage was dissolved. By the statutes of North Dakota divorced persons are prohibited from remarrying until after the expiration of three months from the rendition of the divorce. Thereafter, on August 9, 1909, and at a time when the parties could lawfully have remarried in the state of North Dakota, having evidently concluded that their divorce was a mistake, they came from their home in North Dakota to the city of Detroit, in this state, and there procured a marriage license, and were then and there again married to each other. The marriage was in violation of the laws of this state, which prohibits the remarriage of divorced persons within six months from the date of the divorce. They thereafter resided for a time in this state, but before the expiration of six months from the date of the North Dakota divorce returned to that state. They later, for reasons not stated in the record, separated and ceased to live together as husband and wife. On May 27, 1910, defendant and one Ruth Hull, both residents of North Dakota, came to the city of Detroit, this state, and after procuring the necessary license were then and there duly married, following which they returned to North

Dakota as husband and wife. The second marriage between defendant and Inga Marie Yoder has never been dissolved or declared void in any judicial proceeding. The charge of bigamy laid in the indictment is founded upon the defendant's marriage to Miss Hull.

Though several questions are certified by the trial court, the ultimate and decisive question is whether the second marriage of the Yoders was an absolute nullity, and therefore no foundation for the charge against defendant of bigamy by reason of the marriage with Miss Hull. We pass, without considering, the suggestion of the state that since, at the time of the second marriage between the Yoders, they lawfully could enter into that relation in the state of North Dakota, where they resided, they might come into this state and become lawfully married (citing Bullock v. Bullock, 122 Mass. 3, and Phillips v. Madrid, 83 Me. 205, 22 Atl. 114, 12 L.R.A. 862, 23 Am. St. 770), and, for the purpose of the case, adopt the contention of defendant that the question presented must be determined by the construction and effect to be given to the statutes of this state.

It is well settled that, in order to justify a conviction on the charge of bigamy, the state must establish a valid first marriage and a second marriage in fact. It is also settled that evidence of a ceremonial first marriage carries with it a presumption of validity, except in those cases where shown to have been of a character declared by statute an absolute nullity. If the first marriage be declared null and void by statute, defendant may show the facts in defense without the production of a decree of court so declaring it. But the rule is different with respect to marriages which are only voidable, as distinguished from those which are mere nullities. Hughes, Criminal Law, 1989; Schouler, Domestic Relations, § 14; State v. Parker, 106 N. C. 711, 11 S. E. 517; Beggs v. State, 55 Ala. 108. As remarked in Schouler, Domestic Relations, § 14:

"A void marriage is a mere nullity, and its validity may be impeached in any court, whether the question arises directly or collaterally, and whether the parties be living or dead. But a voidable marriage is valid for all civil purposes until a competent tribunal has pronounced the sentence of nullity in direct proceedings instituted for the purpose."

It is the contention of defendant in the case at bar that his second marriage with his first wife, having been entered into in violation of section 3554, R. L. 1905, prohibiting the remarriage of divorced persons within six months from the date of the decree of divorce, was an absolute nullity, requiring no decree or other judicial proceeding setting it aside, and therefore his marriage with Miss Hull was not bigamous. The statute relied upon in support of this contention provides that: "No marriage shall be contracted while either of the parties has a husband or wife living; nor within six months after either has been divorced from a former spouse; nor between parties who are nearer of kin than first cousins, whether of the half or full blood, computed by the rules of the civil law; nor between persons either one of whom is epileptic, imbecile, feeble-minded, or insane."

The statute is prohibitory, and declares that marriage shall not be contracted between the parties mentioned, but does not declare the same, if consummated, void or a nullity. Defendant invokes the general rule applicable to all contracts entered into in violation of law, and insists that thereunder the marriage in question was a nullity. We are unable to concur in this claim.

While it is true that ordinary contracts entered into in violation of positive law are nullities and unenforceable, the rule has not, at least not by a uniform trend of decisions, been held applicable to marriage contracts. And there is every reason the rule should not be so applied. The marriage relation was commanded at the creation, and has come down through the ages as the safeguard of society, the morality of civilization, and the stability and well-being of governments. And though the contracting parties are primarily involved and their choice of life companions controlling, yet the state is concerned, and through the exercise of its police power regulates the entire subject and declares who may not enter into the relation. The marriage contract is sui generis, and essentially differs from the ordinary affairs of life, and the rules and principles of law controlling contract rights and liability respecting property and property rights should not be held in all respects applicable to the marriage contract.

A person may, after having entered into an ordinary contract, if

in violation of positive law, refuse performance thereof, without the aid of the courts, and he may set up the illegality in an action to enforce the same. But the sacred nature of the relation, and obvious reasons of sound public policy, forbid that the person who enters into a marriage contract, though prohibited by law, may arbitrarily, and without a decree of dissolution, determine for himself the validity of the contract and reject or perform it at his pleasure. He may do so where by statute the contract is expressly declared void; such as marriages between near relatives, and in the case of a former husband or wife. But the rule should not be extended. The contract may become valid by consent, and the best interests of society demand a judicial inquiry, rather than the ex parte conclusion of one of the individuals concerned. An innocent party may be involved in contracts of that nature, and blameless offspring made dependent for their legitimacy upon the whim or caprice of an unnatural parent. For reasons of this character it has often been said by courts and judicial writers that a marriage contract is utterly void only in those cases where expressly so declared by statute. Stewart, Marriage & Divorce, 53; State v. Parker, 106 N. C. 711, 11 S. E. 517; Park v. Barron, 20 Ga. 702, 65 Am. Dec. 641; Crawford v. State, 73 Miss. 172, 18 South. 848, 35 L.R.A. 224.

"Statutes both in England and America have greatly modified the ancient law of valid marriages, and it can only be affirmed in general terms that the legislative tendency is to make marriages voidable rather than void, whenever the impediment is such as might not have been readily known to both parties before marriage, and where public policy does not rise superior to all considerations of private utility. Modern civilization strongly condemns the harsh doctrine of ab initio sentences of nullity." Schouler, Domestic Relations, § 14.

We do not overlook the fact that the courts are not in entire harmony upon the subject; but the weight of reason supports the doctrine that a marriage contract, regularly entered into, though prohibited, may be repudiated by one of the parties as a nullity, without dissolution by decree of court, only when declared null and void by express statute. All marriage contracts not so declared a nullity

upon their face are voidable, and subject to repudiation only upon the entry of a judicial decree of dissolution. And in this connection it may safely be said that a marriage is not absolutely void in any case not expressly so declared by law, when by the subsequent conduct of the parties it may be ratified, confirmed, or made valid by cohabitation. Such is the case at bar. Here the statute only prohibited the remarriage of the parties for a definite time. They remarried before the expiration of the time so prescribed, and thereby violated the law; but it is clear that cohabitation after the time had expired would render the marriage valid by conduct, and it was not, therefore, an absolute nullity.

We are clear, also, that our statutes determine the question adversely to defendant without a resort to general principles of the law. Section 3569, it seems, settles the question beyond controversy. That section provides that all marriages which are prohibited by law "on account of consanguinity, or on account of either party having a former husband or wife then living, if solemnized within this state, shall be absolutely void, without any decree of divorce or other legal proceeding." The legislature, within its province, here singled out from the list of marriages prohibited by section 3554 the marriage between relatives, and where one of the parties has a former husband or wife living, and declared them absolutely void, leaving a necessary inference that it was the intention that all other prohibited marriages should be voidable only; hence valid until set aside by a decree of a competent court. In fact, marriages procured by fraud, and those contracted between infants and incompetents, are by subsequent sections of the statute declared invalid from the time so decreed by court.

Every reason of public policy justifies the ab initio declaration of invalidity in the cases mentioned, but not necessarily so in the other prohibited classes. We can include in the class of nullities marriages contracted as in the case at bar only by enlarging the statute, and this we have no right to do. The subject is purely legislative, and we are impressed that the legislature has wisely spoken. Though Miss Hull, in all probability innocent of any intentional wrongdoing, falls a victim to the wrong committed by defendant, we are not em-

barrassed in reaching the conclusion indicated by the further reflection, often presented in cases of this kind, that innocent offspring may be made to suffer. Our statutes expressly protect their rights in situations of that kind. Section 3588, R. L. 1905.

The cases cited and relied upon by defendant are not controlling, and many of them are not in point. McLennan v. McLennan, 31 Ore. 480, 50 Pac. 802, 38 L.R.A. 863, 65 Am. St. 835; Wilhite v. Wilhite, 41 Kan. 154, 21 Pac. 173; In re Smith, 4 Wash. 702, 30 Pac. 1059, 17 L.R.A. 573, and Eaton v. Eaton, 66 Neb. 676, 92 N. W. 995, 60 L.R.A. 605, all involved marriage contracts entered into in violation of statutes prohibiting the marriage of divorced persons within the time allowed by law for a review of the judgment of divorce in the appellate court. None of those cases involved a criminal charge of bigamy, and were properly decided upon the theory that a divorce does not, under statutes of that kind, become effective or absolute until the expiration of the time for a review of the judgment granting it, with the result that, until it does become effective and final, the marriage contract, for all intents and legal purposes, remains intact, and the marriage within the prohibited time brings the case within the clause of the statute declaring null and void marriages when one of the parties has a former husband or wife living.

Our conclusion, therefore, is that defendant's second marriage with his first wife was valid until set aside by a competent court and not a nullity, as contended.

Order affirmed.

JAGGARD, J., took no part.