## PLUMMER et al. v. DAVIS.

No. 22779.  Oct. 2, 1934.

Rehearing Denied Oct. 23, 1934.

Taylor & Taylor and Steven C. Treadwell, for plaintiffs in error.

Lillard, Gibbons & Wheeler, for defendant in error.

Wm. G. Davisson, amicus curiae.

PER CURIAM. This action was instituted in the county court of Oklahoma county in a proceeding for determination of heirship of D. V. Davis. The county court held that Bobby Roy Allen Plummer, the grandson of deceased, was her sole heir. This decision was reversed by the district court, which held that Otis P. Davis was the surviving husband of D. V. Davis, and as such was entitled to share in the distribution of her estate. This question depends upon whether or not the marriage of deceased with Otis P. Davis entered into within six months from the date of her decree of divorce from her former husband, was void or voidable. If this marriage was void, Otis P. Davis took no rights whatever under it, and her sole heir is the grandson. If the marriage is voidable, then the second husband inherits his share in her estate. It is not claimed that any proceedings were ever instituted to annul the marriage and the status of the parties was fixed at the time of her death, so that if Otis P. Davis was her husband at that time, even by a voidable marriage, he is nevertheless entitled to inherit.

The essential part of the Oklahoma law which governs this matter came originally from Kansas, and an analysis of the Kansas statute, as originally adopted and since amended, together with an analysis of the Oklahoma statute, with its recent amendment, will throw great light upon the question.

In 1881 Kansas adopted section 1, chapter 126, amending section 647 of the Kansas Code, the essential part of which reads:

"A decree granted at the instance of one party shall operate as a dissolution of the marriage contract as to both and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other; and no proceeding for reversing or vacating the judgment or decree divorcing said parties shall be commenced unless within six months after the rendition of said judgment or decree, and during said six months and the pendency of said proceeding for reversing or vacating said judgment or decree, **it shall be unlawful for either of said parties to marry, and any person so marrying shall be deemed guilty of bigamy.**"

This statute was construed in 1895 in the case of Conn v. Conn (Kan. App.) 42 P. 1006. In the Conn Case the marriage took place 16 days after the date of the decree of divorce. The widow under the second marriage brought suit for partition of certion real estate left by her deceased husband. The question decided by the court was whether the marriage was void or voidable, and it was held to be voidable. The surviving widow was permitted to participate in the estate left by her deceased husband. The court in discussing the statute said:

"It will be observed that the laws of both of these states (referring to Washington and Oregon) unlike sec. 1, c. 126, Laws Kan. 1881, make the parties to the divorce pro-

ceedings incapable of contracting marriage within the time limited for taking an appeal, while our statute simply declares that it shall be unlawful for either party to marry within six months after the decree is entered. It does not in terms pronounce them incapable of entering into the marriage relation within that period, nor does it declare void a marriage solemnized in violation of the prohibiton of the statute."

And in the concluding portion of the court's opinion, we find this language:

"We think that as the decree of divorce entered on November 18, 1887, became final three days thereafter, because of the failure to give notice in open court of an intention to prosecute proceedings in error, and as the statute contained no clause of nullity regarding a subsequent marriage, nor declared the parties incapable of contracting marriage within the period of six months from the date of the decree, the marriage of plaintiff below to Lorenzo D. Conn on December 4, 1887, was valid, although she might be prosecuted for consummating such marriage in violation of the statute. This construction seems to be in accord with the views of the Legislature when in 1889 the law was amended so as to make absolutely void a marriage by either party to a divorce suit before the expiration of six months from the rendition of the decree, and during the pendency of proceedinge in error."

Thus it is plainly seen that the Supreme Court of Kansas based the foregoing holding upon the wording of the statute. This statute was amended by the Legislature of Kansas in 1889, and as amended came before the Supreme Court again in Blush v. State, 46 P. 185. The statute, as amended, in part reads:

"But whether a notice be filed as herein provided or not, or whether proceedings in error be commenced as herein provided, or not, it shall be unlawful for either party to such divorce suit, to marry any other person within six months from the date of the decree of divorcement, and if notice be filed and proceeding in error be commenced as hereinbefore provided, then it shall be unlawful for either party to such cause to marry any other person until the expiration of 30 days from the date on which final judgment shall be rendered by an appellate court on such appeal. And every person marrying contrary to the provisions of this section shall be deemed guilty of bigamy and **such marriage shall be absolutely void."**

The court refers to the Conn Case in the opinion in this language:

"This court, in passing upon a similar question (Conn v. Conn, 2 Kan. App. 419, 42 P. 1009), held that a marriage contracted within six months under the law of marriage

and divorce, as it stood in 1881, was valid, but placed it upon the ground that the Code of 1881, unlike the statutes of Oregon and Washington, simply declared that it should be unlawful for either party to marry within six months after the decree, and did not make the parties incapable of contracting, nor declare a marriage so solemnized void; and Judge Clark, in rendering the decision of the court in that case, makes this distinction very clear, and very plainly intimates that if the law governing that case had contained the provisions which it now contains, the decision would have been different. In speaking of the construction given to the statute in 1881, he says: 'This construction seems to be in accord with the views of the Legislature when, in 1889, the law was amended so as to make absolutely void a marriage by either party to a divorce suit before the expiration of six months from the rendition of the decree, and during the pendency of proceeding in error.' "

The change in construction of the Kansas statute is brought about by the amendment, which added to the statute makes it read that any marriage consummated within the six months is not only unlawful but absolutely void. The Kansas statute, as enacted in 1889, with slight variations in wording which are immaterial, was borrowed by the Legislature of Oklahoma and became the law of Oklahoma in the early territorial days. This law was construed by Justice Kennamer in the case of Atkeson v. Sovereign Camp W. O. W. et al., 90 Okla. 154, 216 P. 467, Justice Kennamer quotes sections 4970, 4971, and 4973 of the Revised Laws of 1910, which are the same as sections 509, 510 and 512 of the Compiled Stats. of Oklahoma for 1921. The last paragraph in section 4971 reads:

"Any person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage shall be absolutely void."

Justice Kennamer states:

"We believe that these statutes are clear in their meaning and are mandatory. It is our opinion, from these statutes and the controlling decisions in this jurisdiction and others, construing this statute and similar ones, that any marriage attempted to be contracted in violation of the express provisions of the law is absolutely void."

The Legislature of Oklahoma was evidently not satisfied with the construction placed upon the statute by this court in Atkeson v. Sovereign Camp W. O. W. et al., supra. In 1925 this statute was amended and appears in the 1931 Statute under section 674, which we quote in full:

"A party desiring to appeal from a judg-

ment granting a divorce, must within ten days after such judgment is rendered file a written notice in the office of the clerk of the court, duly entitled in such action, stating that it is the intention of such party to appeal from such judgment. If notice be filed as aforesaid, the party filing the same may commence proceedings in error for the reversal or modification of such judgment at any time within four months from the date of the decree appealed from and not thereafter. And it shall be unlawful for any person who has a living husband or wife to marry another person in any other state within six (6) months from date of decree of divorcement granted in this state and cohabit with such second husband or wife in this state during said period. It shall be unlawful in any event for either party to such divorce suit to marry any other person within 6 months from the date of the decree of divorcement; and if notice be filed and proceedings in error be commenced as hereinbefore provided, then it shall be unlawful for either party to such cause to marry any other person until the expiration of 30 days from the day on which final judgment shall be rendered pursuant to such appeal. Any person marrying or otherwise violating the provisions of this section shall be deemed guilty of bigamy."

It will be observed that in this amendment the Legislature eliminated the last clause, which reads: "And such marriage shall be absolutely void."

The amended statute went into effect on April 6, 1925, and repealed all acts and parts of acts in conflict with it. One of the things which it repealed was the last clause in what was section 510 in the 1921 Statute, but appears at 674 in the 1931 Statute. The court must assign some reason to the Legislature for eliminating the last clause. The statute had been construed in Atkeson v. Sovereign Camp W. O. W., supra, and it was held that any marriage consummated within six months after the date of a decree of divorcement was absolutely void. We are unable to assign to the Legislature any purpose in eliminating that clause, except that the holding in the Atkeson Case was unsatisfactory and the Legislature decided to return to the construction of the statute as declared by the Kansas court in Conn v. Conn, supra.

The author of Ruling Case Law, in 25 R. C. L. 1050, paragraph 276, in discussing the Legislature's intent in changing statutes, states:

"A change in the phraseology of an amendatory statute raises a presumption that a departure from the old law was intended. The Legislature must be presumed to know both the language employed in the former acts and the judicial construction placed upon them, and if in a subsequent statute on the same subject it uses different language in the same connection, the courts must presume that a change of the law was intended, and after a consideration of the spirit and letter of the statute will give effect to its terms according to their proper significance. So the omission of a word in the amendment or re-enactment of a statute will be assumed to have been intentional. Where it is apparent that substantive portions of a statute have been omitted and repealed by the process of revision and re-enactment, courts have no express or implied authority to supply the omissions that are material and substantive and not merely clerical and inconsequential, for that would in effect be the enactment of substantive law. The statute in such a case should be effectuated as the language actually contained in the latest enactment warrants; and words that were a part of the omitted substantive provisions but are useless as re-enacted may be disregarded as being mere surplusage; and appropriate effect should be given to the connected and complete terms and provisions as they appear in the re-enacted statute, when it can be done without violating the organic law or the legislative intent."

We therefore hold that it was the intention of the Legislature in amending section 510 of the 1921 Statutes, to likewise amend the construction which this court had placed upon that statute and give the section a meaning different from what it was construed in the Atkeson Case. This being true it was evidently the intention of the Legislature that a marriage consummated within six months from the date of a decree of divorce should be voidable and not void. This accords with the holding of the Kansas court in the Conn Case on the same statute prior to its amendment by the Legislature of Kansas.

In Hunt v. Hunt, 23 Okla. 490, 100 P. 541, this court held in paragraph 2 of the syllabus:

"Section 3, art. 1, c. 51, par. 3484, Wilson's Rev. & Ann. St. Okla. 1903, provides: 'Every male under the age of 18 and every female under the age of 15 years, are expressly forbidden and prohibited from entering into the marriage relation.' Section 16, art. 1, c. 51, par. 3497, of the same statute makes criminal and prescribes a penalty for those solemnizing or entering into marriages contrary to the foregoing provisions. A youth of 16, and a girl of 14, were married. Held, that while the marriage was prohibited and illegal, it was voidable only, and not void."

And in White v. McGee, 149 Okla. 65, 299 P. 222, this court had under consideration a marriage by infants under the prohibited age.

The doctrine of Hunt v. Hunt, supra, was approved, this court saying:

"In construing this section in connection with the penal statutes for marriage of persons under the ages set forth in the above section, this court held that such marriage is voidable only, and not void." See Hunt v. Hunt, 23 Okla. 490, 100 P. 541.

"In the opinion, this court said, after reviewing the decisions from other states:

"'The rule to be gathered from all of the foregoing cases of this character is that, notwithstanding the statute may penalize those who solemnize or those who enter into marriage contrary to statutory authority, the marriage itself is not void unless the statute itself so makes it, and hence in the case at bar, although the marriage was expressly forbidden and prohibited, it was voidable and not void. While marriage is a personal relation arising out of a civil contract, it differs to such an extent from all other contracts in its consequences to the parties and to the public that the rule that prohibited and penalized contracts that are void does not apply thereto. * * * This conclusion on our part necessarily establishes the proposition that the relation entered into between these parties constituted them husband and wife.'"

A marriage which may be ratified and ripen into a valid marriage is not void. Commissioner Ames, in Fearnow v. Jones, 34 Okla. 695, 126 P. 1015, in considering an incestuous marriage, in the body of the opinion, says:

"We recognize the danger of undertaking to lay down a general rule; but it seems to us that it is not far wrong to say that a marriage may be considered voidable when it is possible under any circumstances for the plaintiffs to contract the marriage, or subsequently to ratify it, while it should be considered void if it is impossible for them under the law to contract it, and if it is impossible for them subsequently by any conduct to ratify it, and if the statute expressly declares that it is void. As said by the court in State v. Yoder, 113 Minn. 503, 130 N. W. 10:

"'And in this connection it may be safely said that a marriage is not absolutely void in any case not expressly so declared by law, when by the subsequent conduct of the parties it may be ratified, confirmed, or made valid by cohabitaion."

It has been recently held by this court that where a marriage is entered into by a divorced party within six months after the date of the divorce decree, and where said marriage continues until the expiration of said six months and thereafter in good faith, the relation ripens into a valid common-law marriage and is equivalent of the ratification of the voidable marriage consummated within the six months' period.

In Mantz v. Gill, 147 Okla. 199, 296 P. 441, this court said:

"Where a second marriage is entered into in good faith, and the parties continue to cohabit without change during and beyond the statutory six months' period of impediment, this relationship ripens into a common-law marriage. Such marriage is recognized as valid in this state by our court. Andrews v. Hooper, 138 Okla. 104, 280 P. 424; Mudd v. Perry, 108 Okla. 168, 235 P. 479; Fisher v. Fisher, 116 Okla. 129, 243 P. 730; and a surviving husband of a common-law marriage has the right to appear and contest the will of his deceased wife."

See, also, Andrews v. Hooper, 138 Okla. 104, 280 P. 424; State of Minn. v. Yoder (Minn.) 130 N. W. 10, L. R. A. 1916C, 686.

So far as property rights of the parties are concerned, a decree of divorce completely severs the marriage relation.

In Brown v. Capps, 164 Okla. 91, 22 P. (2d) 1008, this court held in paragraph 2 of the syllabus:

"Section 676, O. S. 1931 (512, C. O. S. 1921), which provides that 'every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree does not become absolute and take effect until the expiration of six months from said date,' must be considered to apply only to that portion of section 674, O. S. 1931, which relates to appeals and remarrying within six months following the date upon which the divorce is granted."

See, also, Durland v. Durland (Kan.) 74 P. 274; Barnett v. Frederick, 33 Okla. 49, 124 P. 57.

This court holds that the marriage between D. V. Davis and Otis P. Davis was voidable and not void; that upon the death of the former, the latter became entitled to his distributive share in her estate. The judgment of the district court is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys J. A. Duff, Summers Hardy, and John Ladner, in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. J. A. Duff and approved by Mr. Hardy and Mr. Ladner, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.