Dear Administrator Bashore,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. What fee, if any, may the State Department of Health assess the Professional Boxing Commission pursuant to 3A O.S. 2001, § 605(C), which provides "[t]he State Department of Health shall provide administrative support, including, but not limited to, office space, equipment, and furnishings, for the [Professional Boxing] Commission and shall manage the [Professional Boxing] Commission's funds?"
 2. What are the definitions of the terms "administrative support" and "equipment" as used in 3A O.S. 2001, § 605(C)?
¶ 1 Your questions relate to the relationship between the Oklahoma State Department of Health ("Health Department") and the Oklahoma Professional Boxing Commission ("Boxing Commission"). As such, a brief overview of the recent legislative history of the Boxing Commission is in order.
 Recent Legislative History
¶ 2 For several years prior to July 1, 1999, the Professional Boxing Advisory Committee (now known as the Oklahoma Professional Boxing Commission) was associated with the Department of Labor.See 3A O.S. Supp. 1998, §§ 601-622[3A-601-622]. During such time, among other responsibilities, the Department of Labor was responsible for "incur[ing] expenses necessary for administering the provisions of the Oklahoma Professional Boxing Licensing Act including but not limited to office equipment, furniture, stationery, printing and postage. Id. § 605(C). Similarly during such time, the Legislature provided for a revolving fund for the Department of Labor designated the "Oklahoma Professional Boxing Licensing Revolving Fund" and specifically provided that the Department of Labor had the authority to budget and expend the revolving monies for the "purpose of implementing the provisions of the Oklahoma Professional Boxing Licensing Act."Id. § 616(A).
¶ 3 Effective July 1, 1999, the Professional Boxing Advisory Committee was removed from its association with the Department of Labor. See 1999 Okla. Sess. Laws ch. 210, §§ 1, 5. New law was enacted creating the Oklahoma Professional Boxing Commission.Id. § 3. Section 605 of Title 3A was amended, originating the relationship between the Boxing Commission and the Health Department. Id. § 5. It is this new language which must be interpreted to answer your questions.
 Current Statutory Language
¶ 4 The current statutes, which are relevant to the financial relationship between the Boxing Commission and the Health Department, provide as follows:
 C. The State Department of Health shall provide administrative support, including, but not limited to, office space, equipment, and furnishings, for the Commission and shall manage the Commission's funds. Persons employed by the Commission shall serve at the direction and pleasure of the Commission but shall, in all other matters relating to employment, be unclassified employees of the State Department of Health.
3A O.S. 2001, § 605[3A-605](C).[1]
 A. There is hereby created in the State Treasury a revolving fund for the Oklahoma Professional Boxing Commission to be designated the "Professional Boxing Licensing Revolving Fund". The fund shall be a continuing fund, not subject to fiscal year limitations, and shall consist of all monies received from fees, administrative fines, reimbursements, bond proceeds, and sale of materials, and shall include grants and gifts, pursuant to the Oklahoma Professional Boxing Licensing Act. All monies accruing to the credit of said fund are hereby appropriated and may be budgeted and expended by the State Department of Health as directed by the Commission for the purpose of implementing the provisions of the Oklahoma Professional Boxing Licensing Act[.]
Id. § 616(A) (emphasis added).
 Statutory Construction
¶ 5 The fundamental principle of statutory construction is to ascertain the underlying legislative intent through an examination of the statute's language. Fuller v. Odom,741 P.2d 449, 452 (Okla. 1987). There is a presumption "that the legislature has expressed its intent in a statute and that it intended what it so expressed." TXO Prod. Corp. v. Okla. Corp.Comm'n, 829 P.2d 964, 969 (Okla. 1992). When interpreting statutes, an effort is made to harmonize different sections without doing violence to any section.
 In construing statutes, harmony, not confusion, is to be sought and when parts of an act are reasonably susceptible of a construction which will give effect to both and to the words of each, without violence to either, such construction should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict.
Indep. Sch. Dist. No. 89 v. Okla. City Fed'n of Teachers, Local2309, 612 P.2d 719, 722 (Okla. 1980). It is with these guiding principles in mind that we determine the statutory relationship between the Health Department and the Boxing Commission.
 Fee Assessment
¶ 6 You first ask if the Health Department has authority to assess a fee for the statutorily mandated services it provides to the Boxing Commission. Before addressing the specific issue of a fee assessment, however, the manner in which the Legislature has provided for the financial control of the Boxing Commission's revolving fund is discussed.
¶ 7 The Legislature has mandated that the Health Department provide "administrative support" to the Boxing Commission and "manage" the Boxing Commission's funds. 3A O.S. 2001, § 605[3A-605](C). The Legislature also mandated that the Boxing Commission's funds may be budgeted and expended by the Health Department, "as directed by the [Boxing] Commission." Id. § 616(A). Accordingly, by reading the two statutes together, one in light of the other, it is evident that while the Health Departmentmanages, budgets and expends the Boxing Commission's funds, it must do so as directed by the Boxing Commission.
¶ 8 This interpretation of the two statutes (i.e. that the Boxing Commission, rather than the Health Department, has ultimate control over the revolving fund) is further supported by the 1999 revision to the language of Section 616. Prior to 1999, the statute creating the revolving fund for the Boxing Commission provided in part: "All monies accruing to the credit of said fund are hereby appropriated and may be budgeted and expended by the Department [of Labor] for the purpose of implementing the provisions of the Oklahoma Professional Boxing Licensing Act."3A O.S. Supp. 1998, § 616[3A-616](A). In 1999, when the Legislature amended this statute, it replaced the Department of Labor with the Health Department, and more importantly added the phrase:"as directed by the [Boxing] Commission." See 1999 Okla. Sess. Laws ch. 210, § 15. As set forth in full above, the Legislature changed the phraseology of the former statute by specifically providing that the Boxing Commission, not the Health Department, directs the budgeting and expending of the revolving fund.
 [A] change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended. Where the former statute was clear . . . the amendment may reasonably indicate legislative intent to alter the law.
Irwin v. Irwin, 433 P.2d 931, 934 (Okla. 1965) (citation omitted).
See also State ex rel. Bd. of Tax Roll Corr. v. Mack TruckSales, 620 P.2d 388, 391 (Okla. 1980) (quoting Plummer v.Davis, 36 P.2d 938, 941 (Okla. 1934), overruled on othergrounds by In re Mo-se-che-he's Estate v. Rogers, 107 P.2d 999
(Okla. 1940)).
 A change in the phraseology of an amendatory statute raises the presumption that a departure from the old law was intended. The Legislature must be presumed to know both the language employed in the former acts and the judicial construction placed upon them, and if in a subsequent statute on the same subject it uses different language in the same connection, the courts must presume that a change of the law was intended, and after a consideration of the spirit and letter of the statute will give effect to its terms according to their proper significance. So the omission of a word in the amendment or re-enactment of a statute will be assumed to have been intentional. Where it is apparent that substantive portions of a statute have been omitted and repealed by the process of revision and re-enactment, courts have no express or implied authority to supply the omissions that are material and substantive and not merely clerical and inconsequential, for that would in effect be the enactment of substantive law. The statute in such a case should be effectuated as the language actually contained in the latest enactment warrants. . . .
Id.
¶ 9 Therefore, while the Health Department manages the revolving fund, the Boxing Commission controls and directs how the funds are budgeted and expended. Your first question, however, does not specifically ask which entity has control over the expenditures made by the Boxing Commission. Rather, you ask whether the Health Department has authority to assess a fee for the statutorily mandated administrative services it provides to the Boxing Commission. Initially, to determine an agency's authority, the express statutory language used by the Legislature is examined.
¶ 10 By examining the letter of the law, it is clear that there is no express authorization for the Health Department to assess a fee for providing administrative support to the Boxing Commission. There is no statute or administrative rule which provides for such a fee. Likewise, there is no line-item appropriation to the Health Department for such fee. As there is no specific authority for the fee, the question becomes whether the Health Department has the implied authority to assess the fee.
 [A]n officer or agency has, by implication and in addition to the powers expressly given by statute, such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers. However, an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority.
Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980) (citations omitted).
¶ 11 "[L]egislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent." Ethics Comm'n v. Keating, 958 P.2d 1250, 1256 (Okla. 1998). In other cases, the Legislature has provided agencies monies to cover the cost of providing administrative support to another agency. For instance, the Office of the State Auditor and Inspector is required to provide administrative support for the Oklahoma State Pension Commission. 74 O.S. Supp. 2002, §941[74-941](D). With regard to such support, the Legislature set forth the following provision recognizing the costs and apportioning same:
 The cost of providing the administrative support shall be apportioned by the State Auditor and Inspector among . . . [various retirement systems] in proportion to the percentage that the assets of each system at the end of the preceding fiscal year were to the combined total of the assets of the systems.
Id.
¶ 12 Similarly, the District Attorneys Council provides office, support, staff and secretarial services to the Crime Victims Compensation Board. 21 O.S. 2001. § 142.5(D). The Legislature recognized those costs and appropriated funds to the District Attorneys Council to cover the costs as follows:
 All monies accruing to the credit of said Fund are hereby appropriated and, except for those monies specifically authorized by the Legislature to be expended by the District Attorneys Council for administration of the Crime Victims Compensation Board or operating expenses for administering federal grant programs, may be budgeted and expended by the Board for the purpose of implementing the provisions of the Oklahoma Crime Victims Compensation Act including the provisions set forth in Section 142.20 of this title.
21 O.S. 2001, § 142.17[21-142.17] (footnote omitted).
¶ 13 In a recent Attorney General Opinion, we noted that the State Bond Advisor had a line item appropriation in the Department of Central Services budget to cover the administrative support provided by the Department of Central Services to the State Bond Advisor. See A.G. Opin. 03-3. No such line item exists with regard to the support provided by the Health Department. Also, the statutory language creating the Bond Oversight Revolving Fund differs from the revolving fund language creating the Professional Boxing Licensing Revolving Fund in several respects. Perhaps most importantly, the Bond Oversight Revolving Fund language begins as follows: "There is hereby re-created in the State Treasury a revolving fund for theDepartment of Central Services, to be designated the `Bond Oversight Revolving Fund'." Id. (quoting 62 O.S. 2001, §695.8a[62-695.8a])[2] (emphasis added). In contrast, the Professional Boxing Licensing Revolving Fund language begins: "There is hereby created in the State Treasury a revolving fund for the OklahomaProfessional Boxing Commission to be designated the `Professional Boxing Licensing Revolving Fund'." 3A O.S. 2001, §616[3A-616](A).
¶ 14 The statutes which provide for the costs associated with administrative support indicate that the Legislature, when it so chooses, provides for the recovery of such costs. Here, there is no specific indication that the Legislature intended for the Health Department to receive any funds for providing administrative support to the Boxing Commission. Considering the lack of statutory authority expressed in 3A O.S. 2001, §§ 605[3A-605]
and 616, as compared to other statutes which provide for the recoupment of administrative costs, there is no discernable or necessarily implied authority for the Health Department to assess a fee.
 Definitions Of "Administrative Support" And "Equipment"
¶ 15 You next ask us to define the terms "administrative support" and "equipment" as used in 3A O.S. 2001, § 605[3A-605](C). The subsection provides in pertinent part:
 The State Department of Health shall provide administrative support, including, but not limited to, office space, equipment, and furnishings, for the Commission and shall manage the Commission's funds.
Id.
¶ 16 Note that the statute requires the Health Department to assist the Boxing Commission in two ways. First, the Health Department must provide administrative support, which is statutorily described as including "office space, equipment, and furnishings." Id. Second, the Health Department must manage the Boxing Commission's funds as directed by the Boxing Commission.Id. § 616(A). Thus, the Health Department is required to provide both tangible objects (i.e., office space, equipment, and furnishings) and financial services (management of the revolving fund) to the Boxing Commission.
¶ 17 While the Legislature carved out two functions to be performed by the Health Department, it also created the Professional Boxing Licensing Revolving Fund for the purpose of implementing the Oklahoma Professional Boxing Licensing Act.Id. § 616(A). There are therefore two sources of funding to pay for expenses associated with the Boxing Commission. The Health Department is responsible for providing "administrative support, including, but not limited to, office space, equipment, and furnishings," but nothing else. Id. § 605(C). All other expenses of the Boxing Commission are to be paid for by its revolving fund. Id. § 616(A). Since it is the obligation of the Health Department to provide "administrative support" including "equipment," you ask for assistance in determining what those two terms mean and what they encompass.
¶ 18 Section 605(C) provides that "administrative support" includes, but is not limited to, things such as "office space, equipment, and furnishings." The categories of office space, equipment, and furnishings are examples of "administrative support," but this list is not all inclusive. Certainly, "office space" indicates a physical location to house the office of the Boxing Commission. "Furnishings" indicate items such as desks and chairs. "Equipment" is described below. Creating an all-inclusive list of items which encompass "administrative support" is virtually impossible and beyond the scope of an Attorney General Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5). "Administrative support," however, does not include every item or service purchased by the Boxing Commission, as the Legislature created the Revolving Fund to bear the cost of the Boxing Commission's needs except for the limited category of "administrative support."[3]
¶ 19 Like the term "administrative support," the term "equipment" is not statutorily defined. Instead, "equipment" is used as one descriptive word in the class of words describing the term "administrative support." Words in a statute are to be understood in their ordinary sense. 25 O.S. 2001, § 1[25-1]. The plain meaning of "equipment" is:
 [T]he equipping of a person or thing . . . the physical resources serving to equip a person or thing . . . all the fixed assets other than land and buildings of a business enterprise . . . syn equipment, apparatus, machinery, paraphernalia, outfit, tackle, gear, materiel can signify, in common, all the things used in a given work or useful in effecting a given end. equipment usu[ally] covers everything, except personnel, needed for efficient operation or service, often applying also to human qualities and skills useful in this way. . . .
Webster's Third new International Dictionary 768 (3d ed. 1993).
¶ 20 The commonly-held definition of "equipment" is quite broad and encompasses most of the items used in the operation of a business. Despite such broad definition, the Health Department is not required to purchase every piece of "equipment" the Boxing Commission requests. If the equipment does not fall within the general category of "administrative support," but rather falls within the nature of "implementing the provisions of the Oklahoma Professional Boxing Licensing Act" the cost must be borne by the Professional Boxing Licensing Revolving Fund-not the Health Department. 3A O.S. 2001, § 616[3A-616](A). And again, like "administrative support," it is impossible to list each and every piece of equipment which falls within the general category of administrative support. Whether a particular item can be classified as "equipment" is a factual determination outside the scope of an Attorney General Opinion. 74 O.S. 2001, §18b[74-18b](A)(5).
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The State Department of Health does not have the authority to assess a fee against the Professional Boxing Commission pursuant to 3A O.S. 2001, § 605(C).
 2. The term "administrative support" is statutorily described as including, but not limited to, "office space, equipment, and furnishings." 3A O.S. 2001, § 605(C). The term "administrative support" therefore includes business necessities such as" office space, equipment, and furnishings." Whether a particular item falls into the category of administrative support is a question of fact outside the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b(A)(5).
 3. The term "equipment" is one particular item describing "administrative support" and is generally defined as physical resources. Whether a particular item is "equipment" is a question of fact outside the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 GRETCHEN ZUMWALT-SMITH Assistant Attorney General
[1] Section 605 also provides that the Boxing Commission may employ personnel, "subject to statutory full-time-equivalent (FTE) limits applicable to the State Department of Health." Id.
§ 605(B).
[2] Section 695.8a was amended in the 2003 First Regular Session of the Forty-Ninth Legislature. See 2003 Okla. Sess. Laws ch. 215, § 3.
[3] We opined, with regard to the relationship between the Real Estate Appraisers Board and the Oklahoma Insurance Department, that the term "administrative direction" is limited to the management function of the Insurance Department. "This `management' function of the [Insurance] Department with regard to these funds includes provision of administrative and staff support in processing the expenditure of funds approved by the [Real Estate Appraisers] Board in its `executive' role as policymaker. Distinct from the [Insurance] Department's management of the funds, approval of expenditure of funds for the operating expenses of the Department and the Board is a function necessary to carry out the State Act, and as such is reserved solely to the [Real Estate Appraisers] Board[.]" A.G. Opin. 03-9.